559 S.E.2d 850

**The STATE, Respondent,**

v.

**William C. McKENNEDY, Petitioner.**

**No. 25415.**

Supreme Court of South Carolina.

Heard Nov. 28, 2001.

Decided Feb. 11, 2002.

Assistant Appellate Defender Aileen P. Clare, of South Carolina Office of Appellate Defense, of Columbia, for petitioner.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Deputy Attorney General Charles H. Richardson, and Assistant Attorney General Tracey C. Green, all of Columbia; and Solicitor Robert M. Ariail of Greenville, all, for respondent.

TOAL, Chief Justice.

William C. McKennedy [1] ("Appellant") appeals his conviction for distribution of crack cocaine. We affirm Appellant's conviction.

---

1. In a hand written document Appellant submitted to the Court of Appeals, Appellant spelled his own name McKinnedy, not McKennedy, as it is spelled in the briefs and the record.

## Factual/Procedural Background

Appellant was indicted by the Greenville County Grand Jury for distributing crack cocaine to an undercover officer. The police captured the March 17, 1998, sale on videotape. The case was set for trial on February 3, 1999. Appellant had other charges pending, and he and his attorney initially believed he was going to be tried for a March 3, 1998, sale of drugs, also captured on video surveillance, at the February 3, 1999, trial. Appellant's attorney claimed he was not notified Appellant would be tried for the March 17, 1998, incident until January 6, 1999. On that day, the State hand-delivered discovery to Appellant's counsel and made clear Appellant would be tried for the March 17, 1998, offense on the February 3, 1999, trial date.

At trial, Appellant's counsel moved for a continuance on grounds Appellant had not been able to determine whether there were any witnesses that could testify on his behalf or as an alibi due to his incarceration. Appellant's counsel did not indicate why he could not have investigated this on Appellant's behalf. Appellant's counsel claimed they were prepared on the March 3rd charge, but had not had time to prepare adequately for trial on the March 17th charge. In response, the State noted that the March 17th charge had been placed on the docket four to five times previously. The trial court then denied Appellant's motion for a continuance.

Appellant's counsel next moved to suppress any identification of Appellant as the individual on the videotape. After holding an *in camera* hearing, the trial judge denied this motion as well. At this point, Appellant's counsel announced Appellant had decided to plead guilty to the charge. After thoroughly questioning Appellant, the trial judge accepted Appellant's plea and sentenced him to eighteen years imprisonment.

Assistant Appellate Defender, Aileen Clare, was assigned to represent Appellant on appeal. Finding the record failed to demonstrate any preserved or legally substantial 'issues for appeal, Ms. Clare filed a petition to be relieved as counsel and a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). In the *Anders* brief, Ms. Clare argued the trial court abused its discretion in denying

Appellant's pre-trial motion for a continuance. Appellant filed a *pro se* response to Ms. Clare's *Anders* brief, identifying several other issues he believed were significant.

The Court of Appeals dismissed Appellant's appeal pursuant to *Anders* and granted Ms. Clare's petition to be dismissed as counsel. Despite being relieved of her obligation to represent Appellant, Ms. Clare filed a Petition for Rehearing based on a factual discrepancy in the Court of Appeals' order: the order stated Appellant was sentenced to seven and one-half years imprisonment, as opposed to eighteen years. The Court of Appeals denied the Petition for Rehearing and substituted a factually correct opinion dismissing Appellant's appeal and granting Ms. Clare's petition for removal.

In an effort to enable Appellant to pursue federal habeas relief, Ms. Clare filed a petition for writ of certiorari in this Court on Appellant's behalf. The issues before this Court are:

I.    Is Appellant required to seek discretionary review by this Court in order to exhaust all state remedies, thereby preserving his ability to seek federal habeas relief?

II.   Did the trial court err in denying Appellant's motion for a continuance?

## LAW/ANALYSIS

### I. Exhaustion of State Remedies

Both Appellant and the State argue that exhaustion of state remedies for the purpose of federal habeas review requires Appellant to petition for writ of certiorari to this Court. We disagree. The State argues further that the Court of Appeals' dismissal of Appellant's appeal pursuant to Ms. Clare's *Anders* brief and his *pro se* response does not constitute presentation of the issues as required for federal habeas relief. We disagree.

### A. Exhaustion of State Remedies

■ Both parties argue Appellant must at least *seek* discretionary review in this Court in order to exhaust Appellant's state remedies for purposes of federal habeas. It is undisputed that federal law requires state prisoners to exhaust all

available state remedies before seeking federal relief. 28 U.S.C.A. § 2254(b) (1992 & Supp.2001).

The Supreme Court addressed the exhaustion of state remedies in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). In *O'Sullivan*, the Supreme Court restated the general federal rule requiring exhaustion of state remedies, explaining the purpose of exhaustion was to allow state courts an opportunity to act on defendant's claims before he presents those claims in federal court. *O'Sullivan*. In *O'Sullivan*, the Supreme Court recognized the recurring question raised by the federal exhaustion rule: "What remedies must a habeas petitioner invoke to satisfy the federal exhaustion requirement?" *Id.* at 842, 119 S.Ct. at 1731, 144 L.Ed.2d at 8. In answering this question, the Supreme Court held state prisoners were required "to file petitions for discretionary review when that review is part of the ordinary appellate procedure in the State." *Id.* at 847, 119 S.Ct. at 1733, 144 L.Ed.2d at 11.

The Supreme Court's holding, however, raises another question: "What qualifies as 'the ordinary appellate procedure' in a given state?" In our State, this Court issued an order defining exhaustion of state remedies:

> We therefore declare that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.

*In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief*, 321 S.C. 563, 563, 471 S.E.2d 454, 454 (1990). The United States Supreme Court made note of this Court's order in its *O'Sullivan* opinion, commenting that the increased burden on state courts likely to result from its holding may be unwelcome in some state courts. *O'Sullivan*. The Court appeared to recognize the State's ability to define the procedure for exhausting remedies within the State, "In this regard, we note nothing in our decision today requires the exhaustion of any state remedy when a State has provided that that remedy is unavailable." *Id.* at 847, 119 S.Ct. at 1735, 144 L.Ed.2d at 11. The Court clarified that the exhaustion

doctrine "turns on an inquiry into what procedures are 'available' under *state* law" and concluded the doctrine did not preclude federal courts from adhering to a state law or rule making a given procedure unavailable. *Id.* at 847–48, 119 S.Ct. at 1734, 144 L.Ed.2d at 11 (emphasis added).

■ In his concurring opinion, Justice Souter elaborated on this point, stating more directly that a State can determine what constitutes exhaustion of its own remedies for purposes of federal habeas relief. In Justice Souter's words, "a state prisoner is likewise free to skip a procedure . . . so long as the State has identified the procedure as outside the standard review process and has plainly said that it need not be sought for the purpose of exhaustion." *Id.* at 850, 119 S.Ct. at 1735, 144 L.Ed.2d at 12 (Souter, J., concurring). The majority opinion in *O'Sullivan* made clear that they did not intend to require exhaustion of any State remedy when the State has declared that remedy unavailable. *Id.* We believe our 1990 order amounts to such a declaration, and, therefore, that *O'Sullivan* does not prevent a prisoner from filing for habeas relief immediately after an adverse decision from this state's Court of Appeals, without first seeking discretionary review by this Court.

The *O'Sullivan* opinion arose out of the Illinois state court system. Under the Illinois appellate system, review by the Supreme Court in most criminal cases is within the Court's "sound discretion." *O'Sullivan* (quoting Ill. Sup.Ct. Rule 315). The Illinois Rules indicate, however, that the discretion of Illinois' Supreme Court is very broad, and contain no definition of what constitutes an exhaustion of Illinois' remedies. *Id.* Under these facts, the United States Supreme Court held "the creation of a discretionary review system does not, *without more,* make review in the Illinois Supreme Court unavailable" for purposes of the doctrine of exhaustion. *O'Sullivan,* 526 U.S. at 848, 119 S.Ct. at 1734, 144 L.Ed.2d at 11 [2] (emphasis added).

---

**2.** In *O'Sullivan,* the Petitioner, Boerckel, was convicted in Illinois state court and then appealed to the Appellate Court of Illinois. After his appeal was denied and his convictions affirmed, Boerckel filed for leave to appeal to the Illinois Supreme Court, a court of discretionary review. The Supreme Court denied his petition and Boerckel filed a petition for habeas relief in the federal district court. Boerckel raised six issues to

The Ninth Circuit addressed the issue that this Court is now facing in *Swoopes v. Sublett,* 196 F.3d 1008 (9th Cir.1999). In *Swoopes,* an Arizona state prisoner appealed his conviction to the Arizona Court of Appeals and his convictions were affirmed. *Swoopes.* In Arizona, the automatic right to appeal is limited to Arizona's Court of Appeals, except in capital cases or when a life sentence is imposed. *Id.* (citing Ariz.Rev.Stat. §§ 12–120.21(A)(1); 12–120.24; 13–4031). In all other cases, the Arizona Supreme Court has discretion to grant review. *Id.* (citing Ariz.Rev.Stat. 12–120.24). Based on the Arizona statute and several Arizona opinions supporting the statute, the Ninth Circuit held post-conviction review by the Arizona Supreme Court to be a remedy that is "unavailable" within the meaning of *O'Sullivan. Swoopes,* 196 F.3d at 1010. Honoring the Arizona statute, the Ninth Circuit held that "claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them." *Id.*

We believe the Ninth Circuit applied the correct analysis and arrived at the correct decision under *O'Sullivan.* Our State has identified the petition for discretionary review to this Court in criminal and post-conviction cases as *outside* South Carolina's standard review process. In our 1990 order, this Court stated that petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies. *In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases.* The 1990 order qualifies as a plain statement that discretionary review "need not be sought for exhaustion." *O'Sullivan,* 526 U.S. at 850, 119 S.Ct. at 1735, 144 L.Ed.2d at 12 (Souter, J., concurring).

We reiterate the substance of the 1990 order, *In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases,* and hold it effectively places discretionary review by this Court *outside* of South Carolina's "ordinary appellate

---

the district court, but he had not raised all six of those issues in his petition for review in the Illinois Supreme Court. As a result, the District Court found that Boerckel had procedurally defaulted on three of his six claims because he had not raised them in his final petition to the Illinois Supreme Court. *O'Sullivan.*

procedure" pursuant to *O'Sullivan.* *O'Sullivan.* at 847, 119 S.Ct. at 1733, 144 L.Ed.2d at 11.

## B. *Anders* Brief

The State argues that articulating an issue in an *Anders* brief does not constitute "fair presentation" of that issue to the appellate court necessary to support habeas review. We disagree.

In *Anders v. California,* the United States Supreme Court announced the procedure an appointed attorney should follow if that attorney believes the client's appeal is frivolous and without merit. 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The Supreme Court held the attorney could petition for permission to withdraw from the case, but that the petition for withdrawal must be accompanied by a brief "referring to anything in the record that might arguably support the appeal." *Id.* at 744, 87 S.Ct. at 1400, 18 L.Ed.2d at 498. Under *Anders,* the defendant must be given time to respond and to raise any additional points after his attorney submits the *Anders* brief. *Id.* The court then is obligated to conduct a "full examination" of the record to determine whether the appeal is "wholly frivolous." *Id.* According to *Anders,* if the reviewing court finds the appeal is frivolous, "it may grant counsel's request to withdraw and dismiss the appeal *insofar as federal requirements are concerned,* or proceed to a decision on the merits, if state law so requires." *Id.* at 744, 87 S.Ct. at 1400, 18 L.Ed.2d at 498 (emphasis added).

The State argues that a dismissal by the Court of Appeals does not qualify as a decision on the merits for purposes of federal habeas review, insisting that the dismissal is based on a finding of frivolousness.[3] The State asserts that arguments presented in an *Anders* brief are not raised for consideration on the merits and are raised merely so the reviewing court may determine if the attorney properly reviewed the case before concluding the appeal was frivolous.

---

**3.** While this Court cannot determine what constitutes a decision "on the merits" under federal law, this Court can determine, for the purposes of state law, whether or not a dismissal pursuant to an *Anders* brief is a "decision on the merits."

■ In this particular case, it is clear the Court of Appeals reached the merits in its dismissal. As discussed, according to *Anders*, the reviewing court is obligated to make a full examination of the proceedings on its own. *Anders*. After such an examination, if the reviewing court agrees with the attorney, it may dismiss the appeal or proceed to a decision on the merits. *Id.* On the other hand, if the court disagrees with the attorney's analysis of the appeal, it must afford the defendant "the assistance of counsel to argue the appeal." *Id.* at 744, 87 S.Ct. at 1400, 18 L.Ed.2d at 498. The purpose of filing a brief under *Anders* is to ensure the *merits* of the appeal are not overlooked. The court has to conclude independently, regardless of counsel's conclusion, whether or not the appeal has merit before it can dismiss the appeal.

In the case at hand, Appellant's counsel filed an *Anders* brief with the Court of Appeals and the Appellant filed a *pro se* response, raising the issues he considered important. In the *Anders* brief, Appellant's counsel argued the trial court committed reversible error by denying Appellant's motion for a continuance under the standard articulated by this Court in *State v. Williams*, 305 S.C. 116, 406 S.E.2d 357 (1991). After reviewing both documents and the record as a whole, the Court of Appeals dismissed the appeal pursuant to *Anders* and *Williams*. The Court of Appeals' citation to *Williams* indicates, at the very least, that it reviewed the merits of the argument Appellant's counsel put forth in the *Anders* brief: whether the trial court erred in denying Appellant's motion for a continuance.

As Appellant has not yet filed any federal habeas petition, we do not know what arguments he will choose to raise. The federal court ultimately will determine whether any issues raised to the Court of Appeals were properly presented for purposes of granting federal habeas relief. To guide them, however, and for purposes of state law, we find the Court of Appeals' dismissal in this case was on the merits.

## II. Denial of Continuance

Appellant argues the trial court committed reversible error in denying his pre-trial motion for a continuance, and that he should be granted a new trial. We disagree.

280

■ It is well-settled in South Carolina that a trial court's denial of a motion for continuance "will not be disturbed absent a clear abuse of discretion." *State v. Williams,* 321 S.C. 455, 459, 469 S.E.2d 49, 51 (1996) (citing *State v. Tanner,* 299 S.C. 459, 385 S.E.2d 832 (1989)). In fact, reversals of a continuance are as " 'rare as the proverbial hens' teeth.' " *Williams,* 321 S.C. at 459, 469 S.E.2d at 51 (quoting *State v. Lytchfield,* 230 S.C. 405, 409, 95 S.E.2d 857, 859 (1957)). This Court has repeatedly upheld denials of motions for continuances where there is no showing that any other evidence on behalf of the defendant could have been introduced, or that any other points could have been raised, if more time had been granted to prepare for trial. *Williams* (citing *State v. Squires,* 248 S.C. 239, 149 S.E.2d 601 (1966)). Furthermore, this Court has held that guilty pleas act as a waiver of all non-jurisdictional defects and defenses, including claims of constitutional violations. *Whetsell v. State,* 276 S.C. 295, 277 S.E.2d 891 (1981).

■ In the case at hand, Appellant pled guilty, and, therefore, waived his right to now raise the denial of his continuance on appeal under *Whetsell.* Regardless, Appellant has made no showing that any evidence could have been introduced if he had more time to prepare for trial. Appellant was taped by the police selling crack to an undercover police officer and does not challenge his identification on appeal. His girlfriend was present at trial and could not remember what she or the Appellant had done on the day in question. Appellant and his attorney had almost one month to prepare for trial. Appellant argued he may have been able to find some witnesses to testify on his behalf if he had not been confined in prison before trial, referring to a neighbor he wanted to interview. He did not name the neighbor, however, or indicate how the neighbor may be able to help him.

This is not a sufficient showing to find an abuse of discretion by the trial judge. *See State v. Tanner* (reversing trial court's denial of motion for continuance when police possessed possible exculpatory evidence which the Solicitor told the defendant had been lost and defendant had not had the opportunity to analyze). Appellant was captured on video tape selling crack, and has made no showing that any new or exculpatory evi-

dence would have been likely to surface if more time was granted.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the Court of Appeals and hold this Court's 1990 order, *In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief,* 321 S.C. 563, 563, 471 S.E.2d 454, 454 (1990), establishes that seeking discretionary review in this Court is outside of South Carolina's ordinary appellate procedure and, therefore, unnecessary for purposes of exhaustion of this state remedies under *O'Sullivan.*

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.