590 S.E.2d 42

The STATE, Respondent,

v.

Virginia BURGESS, Appellant.

No. 3714.

Court of Appeals of South Carolina.

Heard Nov. 5, 2003.
Decided Dec. 15, 2003.

Deputy Chief Attorney Joseph L. Savitz, III and Senior Assistant Appellate Defender Wanda H. Haile, both of the South Carolina Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Sr., Assistant Attorney General William Edgar Salter, III, all of Columbia; and Solicitor Cecil Kelley Jackson, of Sumter, for Respondent.

GOOLSBY, J.

Following an almost daylong drinking episode, Virginia Burgess killed her intoxicated husband sometime during the evening of August 7, 1998. She stabbed him forty-seven times. At trial, Burgess claimed not to remember anything about the evening after the two had argued. A jury convicted her of murder and possession of a weapon during a violent crime. The trial court sentenced her to thirty years imprisonment for murder and five years for the weapons charge, the sentences to run concurrently. On appeal, Burgess argues the trial court abused its discretion by not ordering a psychiatric examination pursuant to section 44–23–410 of the South Carolina Code [1] to determine her competency to stand trial. We disagree and affirm.

---

1. S.C.Code Ann. § 44–23–410 (2002) provides in relevant part:

Whenever a judge of the Circuit Court ... has reason to believe that a person on trial before him, charged with the commission of a criminal offense ..., is not fit to stand trial because the person lacks the

At a pretrial motions hearing held on the eve of trial in May 2000, nearly two years following the decedent's death, defense counsel, who had undertaken the defense of Burgess three months before in February 2000, moved to have the trial court order an evaluation of Burgess's competency to stand trial. Counsel asserted an inability to talk intelligently with her, stated his conversations with her led him to believe she could not assist in her own defense, and pointed to prior I.Q. tests that reflected that Burgess's I.Q. registered between 56 and 66. He offered no medical or mental health records in support of the motion and referred only to records that related to her alcoholism and mental retardation.[2]

The trial judge examined Burgess under oath to determine if she understood the pending charges, the purpose of the proceedings, and the roles of the individuals involved. Burgess said that she understood what she was charged with, that the State claimed she had killed her husband in August of that year; that her lawyer's role was "to represent" her and the prosecutor's role was to "talk against me"; and that a jury would determine her guilt or innocence. Burgess acknowledged that when she talked to her lawyer, she thought she would be able to tell him her side of the story; and that the State would offer witnesses to testify against her and her lawyer would have an opportunity to question them.

Noting that Burgess's demeanor in the courtroom "has been very appropriate" and pointing to the lack of any medical

---

capacity to understand the proceedings against him or to assist in his own defense as a result of a lack of mental capacity, the judge shall: (1) order examination of the person by two examiners designated by the Department of Mental Health if the person is suspected of having a mental illness or designated by the Department of Disabilities and Special Needs if the person is suspected of being mentally retarded or having a related disability or by both sets of examiners if the person is suspected of having both mental illness and mental retardation or a related disability ...; or

(2) order the person committed for examination and observation to an appropriate facility of the Department of Mental Health or the Department of Disabilities and Special Needs for a period not to exceed fifteen days....

2. The trial judge asked defense counsel, "As I understand, there have been no prior medical or psychiatric opinions issued as to the issue of competence; is that right?" Counsel responded, "That's correct, Your Honor."

opinion regarding her competence to stand trial, the trial judge denied the request for a psychiatric examination. He found Burgess "seemed . . . able to understand everything" he had asked her, appeared to understand the proceedings and the role of trial participants, was able to identify the person whom she was alleged to have killed and to state when the killing was alleged to have occurred, and understood the charges made against her.

Defense counsel renewed at trial the motion for a psychiatric examination of Burgess; however, the trial judge denied the motion.

The question of whether to order a competency examination falls within the discretion of the trial judge whose decision will not be overturned on appeal absent a clear showing of an abuse of that discretion.[3] Burgess made no clear showing of an abuse of discretion here.

By statute, the question of whether a defendant is fit to stand trial depends upon whether the defendant, because of a lack of mental capacity, cannot "understand the proceedings" or "assist in his [or her] own defense."[4] Factors to be considered in determining whether further inquiry into a defendant's fitness to stand trial is warranted include evidence of his or her irrational behavior, his or her demeanor at trial, and any prior medical opinion on his or her competence to stand trial.[5] In some circumstances, the presence of just one of these factors may justify a trial court's ordering a further inquiry into a defendant's competency to undergo trial.[6]

Here, Burgess had not previously been adjudicated incompetent to stand trial; the record does not belie the trial judge's observation that her demeanor during the pretrial motion appeared to be "very appropriate";[7] and the record of

---

3.  *State v. Locklair,* 341 S.C. 352, 535 S.E.2d 420 (2000), *cert. denied,* 531 U.S. 1093, 121 S.Ct. 817, 148 L.Ed.2d 701 (2001).

4.  S.C.Code Ann. § 44–23–410 (2002).

5.  *State v. Blair,* 275 S.C. 529, 273 S.E.2d 536 (1981).

6.  *Id.* at 533, 273 S.E.2d at 538.

7.  Nothing in the record indicates the trial judge experienced any difficulty in conversing with Burgess. Thus, we should defer to the trial

the pretrial motion hearing manifests she understood the proceedings, the roles of the various participants, and the charges leveled against her. Beyond defense counsel's statements regarding his inability to talk intelligently with Burgess and his opinion that she could not assist in her own defense, counsel offered nothing to demonstrate that Burgess's mental retardation was such as to render her unfit to stand trial.[8] Under these circumstances we are not inclined to second guess the trial judge and hold he did not clearly abuse his discretion in denying Burgess's motion for a mental examination regarding her fitness to stand trial.[9]

**AFFIRMED.**

---

judge's finding in this regard. *See, e.g., State v. Wright*, 354 S.C. 48, 55, 579 S.E.2d 538, 542 (Ct.App.2003) (stating the "evaluation of demeanor and credibility [are] matters within the peculiar province of the circuit court").

**8.** Indeed, during her testimony both during a *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) hearing and before the jury, Burgess appeared able to advise the court of the medication she had taken both in August 1998, when the killing occurred, and in May 2000, when the trial took place. Although some initial confusion developed regarding whether she was taking Prozac at the time of the offense, she explained that she was not taking it. Burgess admitted that she understood what her Miranda rights meant, but claimed she did not understand them when first questioned by the police. Further, she admitted she had refused to talk to the police at some point during the questioning because "I needed a lawyer and they read me my rights," and that she had invoked her right to counsel twice on the day the offense occurred. Her testimony before the jury provided a detailed account of her activities that led up to the crime and her activities on the morning she reportedly discovered her husband had been killed. Burgess testified she did not recall what had occurred when her husband returned home because she had either passed out or fallen asleep. Burgess's testimony, therefore, seems to undercut any question of her lack of competency to stand trial.

**9.** *See Richardson v. State*, 663 S.W.2d 111, 113 (Tex.Ct.App.1983) (holding the trial judge did not abuse his discretion by refusing the defendant's motion for a psychiatric examination even though counsel's testimony revealed possible problems with the defendant's communication, memory, and veracity where there was no psychiatric testimony and the defendant's testimony refuted counsel's representations); *see also State v. Chapin*, 67 Ohio St.2d 437, 424 N.E.2d 317, 319–20 (1981) (finding "good cause" was not shown to grant a motion made during trial for a competency hearing where the defendant had previously been found competent to stand trial after a pretrial hearing and no objective indication of the defendant's unfitness for trial was demonstrated by the

ANDERSON, J., concurs.

CONNOR, J., dissents in a separate opinion.

CONNOR, J.

I respectfully dissent. In my opinion, the trial judge abused his discretion by failing to order a psychological evaluation of Burgess where there was reason to believe Burgess could not assist her attorney.

Burgess was represented by counsel from the time of the incident. Although counsel discussed with the solicitor the possibility of Burgess having a competency evaluation, counsel never made a motion to have the evaluation performed. Burgess obtained new counsel in February 2000, three months before trial.

During the pre-trial conference the day before trial, the solicitor recounted the procedural history of the case and noted that Burgess had a long history of alcohol abuse and blackouts. Burgess' new counsel requested a psychological evaluation. Counsel informed the judge that he requested an evaluation as soon as he was appointed to the case, but there was confusion over whether the State consented. Counsel argued Burgess had "mental health deficiencies," could not intelligently converse with him, had a recent IQ test showing an IQ of 61, and was unable to assist in her defense. Counsel could not discuss the case with Burgess because she did not understand what he was talking about. According to counsel, Burgess' only focus was when she was getting out of jail.

Counsel quoted from the December 2, 1998, affidavit by Dr. Keith. Dr. Keith opined that Burgess exhibited borderline mental retardation, behaved like a child, and posed no threat to others. Dr. Keith stated that Burgess needed medical procedures to evaluate her mental and physical problems, including an EEG, an MRI, consultation with a neurologist, and a PGI workup. It is not clear that the neurological examination was ever performed.

The only psychological evaluations ever performed on Burgess were in connection with her prior hospitalizations for

defendant's conduct, the defendant's medical records, or defense counsel's mere assertions that the defendant's fitness was now questionable).

alcohol abuse and in connection with her application for SSI.[10] The tests did not address the issue of competency. One test indicated Burgess had a very low survival skills quotient of 45. Because no prior competency evaluations had been performed on Burgess, counsel did not have any further medical evidence to present to the trial judge.

As the majority opinion notes, Burgess appeared to respond appropriately to the questions posed by the trial judge during questioning. However, most of Burgess' answers were a simple "yes, sir" to the judge's questions. Although Burgess identified the charge of "murder," the victim, the month of the crime, and her attorney's role, she was unclear as to the role of the solicitor. Specifically, she appeared to be guessing when answering that the solicitor's role was to "Talk against me?" Burgess also informed the judge that she had not really spoken with counsel "like we should." When asked by the judge if she could tell her side of the story to her attorney, she responded, "I think." Burgess' counsel informed the trial judge that Burgess' communication skills that day were better than they ever were when he attempted to discuss the case with her prior to that time and that he could not determine whether "guilty but mentally ill" was applicable to Burgess at that point. Citing only Burgess' apparent understanding of the roles of the parties and the charges against her, the trial judge denied counsel's motion for a competency evaluation.

Counsel requested reconsideration of his motion at the start of trial, arguing that, as appointed counsel, he did not have the funds to get a psychological evaluation of Burgess performed prior to trial. He informed the judge again about his difficulties in consulting with Burgess, and he argued the evaluation was necessary to determine what defenses could be pursued. Counsel stated as follows:

> I don't believe I can talk to her a little bit. She's very hard to talk to and you almost need a third party like an Ann Kirven who is at the alcohol and drug abuse department to do that because she's—over the years of dealing with [Bur-

---

10. Both Burgess and her counsel testified that Burgess received Supplemental Security Income from the Social Security Administration due to her mental deficiencies. The victim's aunt was the payee responsible for handling Burgess' finances.

gess], she's earned [Burgess'] trust and she opens up a little bit more to her even though it's a little bit incoherent.

Citing *State v. Blair,* 275 S.C. 529, 273 S.E.2d 536 (1981), the judge denied the request, finding Burgess did not exhibit irrational behavior, her demeanor was appropriate, and there was no medical evidence to support further inquiry into competence.

Trial judges have a duty to order a psychiatric examination for a defendant if there is reason to believe the defendant is not fit to stand trial because of an inability to understand the proceedings or an inability to assist in her own defense. *State v. Locklair,* 341 S.C. 352, 364, 535 S.E.2d 420, 426 (2000); S.C.Code Ann. § 44–23–410 (2002) ("Whenever a judge of the Circuit Court . . . has reason to believe that a person on trial before him . . . is not fit to stand trial because the person lacks the capacity to understand the proceedings against him or to assist in his own defense as a result of a lack of mental capacity, the judge *shall* . . . order examination of the person by two examiners designated by the Department of Mental Health . . . .") (emphasis added). " '[E]vidence of a defendant's irrational behavior, his demeanor at trial and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but . . . even one of these factors, standing alone, may, in some circumstances, be sufficient.' " *Blair,* 275 S.C. at 533, 273 S.E.2d at 538 (quoting *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)). Whether to order a competency evaluation is within the trial judge's discretion, and his decision will not be overturned on appeal absent a clear showing of an abuse of that discretion. *Locklair,* 341 S.C. at 364, 535 S.E.2d at 426.

I am guided by the analysis in *State v. Singleton,* 322 S.C. 480, 472 S.E.2d 640 (Ct.App.1996). This Court found the trial judge abused his discretion in failing to order a mental evaluation. At his probation revocation hearing, Singleton's attorney informed the trial judge that Singleton suffered from audio and visual hallucinations and was being treated by the Mental Health Commission. Singleton's mother told the judge that Singleton's odd and violent behavior stemmed from a poisoning incident as a child. Counsel informed the judge that he was seeking a mental evaluation of Singleton and moved to

hold the probation proceeding in abeyance. The trial judge denied the motion, but he later urged treatment for Singleton's mental condition. After reviewing the entire record, the statements to the judge by Singleton's counsel and mother, and the trial judge's concern for Singleton's later treatment, this Court reversed the judge's failure to order an examination pursuant to section 44–23–410. *Singleton*, 322 S.C. at 483–84, 472 S.E.2d at 642.

Similarly, I believe Burgess' counsel presented enough information to the trial judge to give him "reason to believe" that further evaluation of Burgess' condition was warranted. The State did not dispute Burgess' history of blackouts and her low IQ of 61. Counsel repeatedly informed the judge that he had immense difficulty conversing with Burgess and that she did not understand the full ramifications of the trial. The affidavit from Dr. Keith indicated that Burgess was borderline mentally retarded, had the mentality of a child, and was in need of further neurological evaluation. Counsel also indicated the defense of "guilty but mentally ill" could not be pursued absent an evaluation. Most of Burgess' answers during the trial judge's examination of her were one or two words. Further, it does not appear from the record that Burgess was confident she could assist her attorney when she informed the judge that she thought she could tell him her story.

As the majority points out in a footnote, Burgess testified during the *Jackson v. Denno* hearing and, later, in her own defense. During the *Jackson v. Denno* hearing, Burgess stated she did not understand her *Miranda* warnings and she was confused. Burgess' testimony regarding her medicine was extremely confusing, and she stated she had problems remembering things. Prior to testifying in her own defense, the trial judge questioned Burgess regarding her decision to testify. Despite her guess at the pre-trial hearing that the solicitor's role was to "Talk against me?," Burgess did not understand that the solicitor had the burden to prove her guilty and that she did not have a burden to prove her innocence. Although Burgess was able to testify regarding the events on the day of the incident, she repeatedly testified that she passed out on her couch that evening and was not aware of what was happening until she awoke the next day to find her husband deceased. Ann Kirven, Burgess' case worker from the Alco-

hol and Drug Abuse Commission, testified that Burgess exhibited difficulties with comprehension throughout her placement at Morris Village. There was also evidence in the record that Burgess had to defend herself against the victim with a knife on a prior occasion.

Although the majority points to Burgess' testimony as evidence that Burgess was competent to stand trial, I believe the testimony in the record raises further questions regarding Burgess' ability to comprehend the proceedings and assist in her defense. Burgess' inability to comprehend or discuss the case intelligently with her attorney prohibited her attorney from raising possible defenses, including guilty but mentally ill or battered spouse syndrome. Burgess' low IQ, inability to understand the exact role of the solicitor, history of blackouts, deficiencies with comprehension, difficulties remembering, and inability to intelligently discuss her case with her attorney certainly gave the trial judge a "reason to believe" that Burgess needed further evaluation of her competency. Because there was evidence in the record that Burgess could not comprehend or speak intelligently with her attorney, I would find that the trial judge abused his discretion by failing to order an examination of Burgess as required by statute.

Accordingly, I would reverse and remand for a psychological evaluation. I would further order the circuit court to hold a hearing to determine whether Burgess was competent to stand trial. If the circuit court finds that Burgess was incompetent to stand trial, the court should issue an order reversing her conviction and granting her a new trial when she is presently competent to stand trial. If the hearing reveals Burgess was competent, her conviction will stand. *See Blair*, 275 S.C. at 534, 273 S.E.2d at 538 ("[O]n remand, if the hearing reveals Blair was incompetent to stand trial, an order reversing his conviction should be entered and a new trial granted when he is presently competent to stand trial. However, if the hearing reveals Blair was competent to stand trial, the conviction will stand.").