611 S.E.2d 927

**The STATE, Respondent,**

v.

**Brandi Michelle WHITE, (aka: Brandi Michelle Wade), Appellant.**

**No. 3973.**

Court of Appeals of South Carolina.

Submitted March 1, 2005.

Decided April 11, 2005.

Assistant Appellate Defender Aileen P. Clare, of Columbia, for Appellant.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General David A. Spencer, all of Columbia; and Solicitor Thomas E. Pope, of York, for Respondent.

HUFF, J.:

Appellant, Brandi M. White a/k/a Brandi Michelle Wade, pled guilty to six counts of threatening a public official. The trial judge sentenced White to six five-year terms, three of them to run consecutively and three of them to run concurrently. White appeals, asserting error in the trial judge's failure to order a medical examination to determine her competency. We affirm.[1]

## FACTUAL/PROCEDURAL BACKGROUND

White was indicted after she wrote a series of threatening letters to a probation officer and a detention center officer.

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

On March 5, 2004, White appeared before the circuit court and pled guilty on six indictments charging her with threatening a public official. During the plea hearing, the trial court asked White if she had been treated for any mental or emotional disability, and White indicated that she had been treated for mental problems. White's attorney then explained White had been admitted to a psychiatric institution at least six times and that she had "a myriad of diagnoses which Dr. Morgan [would] elaborate on over the history of her life." Counsel further indicated White had a history of bipolar disorder, depression, and post-traumatic stress disorder, and that she was currently taking the medication "Tegretol." The court noted White had not been sent for an evaluation so they were not holding a *Blair*[2] hearing, but questioned whether the Tegretol would prevent White from being able to understand what they were doing at the plea hearing. The following colloquy then occurred:

> [Defense Counsel]: No, Sir, not from my impressions and discussing the facts with her regarding the case, she had no difficulty understanding what she is facing or relaying to me what she actually did with respect to these charges.

> [Court]: Well, as an attorney and having, you have very wisely gotten Dr. Morgan involved in this, but in your analysis of this matter have you ruled out any mental defenses? Have you considered and/or . . . ruled out any mental defenses such as McNaughton or guilty but mentally ill?

> [Defense Counsel]: In my opinion, your honor, they do not apply in this situation.

After the solicitor placed the factual basis for White's plea on the record, White's attorney argued in mitigation that White was born with a condition that caused a shunt to be placed in her head and the shunt was "still there today." He again noted for the court that White had a history of mental health problems. Counsel then presented Dr. Morgan, who had examined White and was given White's mental health and neurological records.

Dr. Morgan stated that White was born with water on the brain and that she had a shunt put in at several months of age

---

2. *State v. Blair,* 275 S.C. 529, 273 S.E.2d 536 (1981).

to shunt the water from the brain. She was followed by a neurosurgeon until July 1998, at which time it was discovered that part of the apparatus was embedded in the brain, but that it seemed to be working okay and "they decided not to do anything to it at that time." White failed to follow up with the neurosurgeon and Dr. Morgan was concerned because of the fact that White had begun to complain of headaches, which could be an indication of pressure building in the brain. He stated, "So I think there is some physical basis that may account for some of the behavior that we're observing here although it has not really been worked out very carefully." Dr. Morgan also noted White had been in the Department of Mental Health on six different occasions and had been diagnosed with depression, bipolar disorder, alcohol and drug problems and post traumatic stress disorder. He then concluded as follows:

> In a situation like this you naturally wonder about the question you raised guilty by mentally ill, whether she can control her behavior, that maybe she couldn't and that sounds like what I am saying, but if you look at the behavior here and the letters and the context in which she explains those, there is a deliberateness about them, a sort of calculated plan here, because she's basically happy where she is. Sadly she says it is the best home I've ever had, and so I think a lot of this is to perpetuate a situation she finds herself more comfortable in than she's ever had before from her observations. . . . So I don't think she fits the guilty but mentally ill even though in another circumstance I think that might be a logical assumption.

Thereafter, White's attorney informed the court that he had represented White on a previous charge of threatening a public official for which she was currently incarcerated, and at that time he sent her for a mental health evaluation.

## LAW/ANALYSIS

■ White appeals asserting the trial court abused its discretion by failing to order a medical examination to determine her competency to stand trial because she had a documented history of congenital brain damage and severe mental illness. She argues, based on Dr. Morgan's statements that the embedded shunt possibly accounted for some of her behav-

ior and that she had received in-patient psychiatric care on at least six occasions, the court's failure to order a mental examination for her was an abuse of discretion. We disagree.

South Carolina Code Ann. § 44–23–410 (2002) provides in pertinent part:

Whenever a judge of the Circuit Court or Family Court has reason to believe that a person on trial before him, charged with the commission of a criminal offense or civil contempt, is not fit to stand trial because the person lacks the capacity to understand the proceedings against him or to assist in his own defense as a result of a lack of mental capacity, the judge shall:

(1) order examination of the person by two examiners designated by the Department of Mental Health if the person is suspected of having a mental illness or designated by the Department of Disabilities and Special Needs if the person is suspected of being mentally retarded or having a related disability or by both sets of examiners if the person is suspected of having both mental illness and mental retardation or a related disability . . . or

(2) order the person committed for examination and observation to an appropriate facility of the Department of Mental Health or the Department of Disabilities and Special Needs for a period not to exceed fifteen days. . . .

■ "The statutory injunction, that an examination be ordered when the circuit judge 'has reason to believe' that a defendant is not mentally competent to stand trial, involves the exercise of the discretion of the trial judge in evaluating the facts presented on the question of competency." *State v. Drayton*, 270 S.C. 582, 584, 243 S.E.2d 458, 459 (1978). Thus, despite the mandatory language contained in § 44–23–410, the decision of whether to order a competency examination is within the discretion of the trial judge, whose decision will not be overturned absent a clear showing of abuse of discretion. *Id.*; *State v. Weik*, 356 S.C. 76, 83, 587 S.E.2d 683, 686 (2002); *State v. Singleton*, 322 S.C. 480, 483, 472 S.E.2d 640, 642 (Ct.App.1996). This is so, because the determination of whether there is "reason to believe" a defendant lacks a certain mental capacity necessarily requires the exercise of

discretion. *State v. Bradshaw,* 269 S.C. 642, 644, 239 S.E.2d 652, 653 (1977).

In the case at hand, it is clear White's counsel was aware of her previous mental health history, yet counsel informed the trial judge that White had no difficulty in either understanding what she was facing or in relaying to him what she actually did with respect to the charges. When asked by the trial judge if he had ruled out any mental defenses, White's counsel indicated that he had, because they did "not apply in this situation." Thereafter, White's attorney presented Dr. Morgan, who had examined White. Although Dr. Morgan expressed some concern that the embedded shunt might be a physical basis that may account for some of White's behavior, he found White's actions to be a deliberate and calculated plan to perpetuate a situation she found comfortable. He then opined the guilty but mentally ill defense did not fit White's situation. White's attorney then informed the court he had previously sent White for a mental health evaluation when he represented White on a prior charge of threatening a public official, for which she was incarcerated at the time of the plea hearing.

Based on the record before us, we cannot find a clear abuse of discretion in the trial judge's failure to order a competency examination for White. *See State v. Burgess,* 356 S.C. 572, 575–76, 590 S.E.2d 42, 44 (Ct.App.2003) (holding appellate court would not second guess trial judge's denial of motion for psychiatric examination where defendant had not previously been adjudicated incompetent to stand trial, trial judge found defendant's demeanor during proceeding appeared appropriate, and the record showed defendant understood the proceedings, roles of participants and charges against her); *State v. Bradley,* 343 S.C. 461, 462–64, 539 S.E.2d 720, 721–22 (Ct.App. 2000) (finding, in light of evaluation of Department of Mental Health doctor concluding Bradley was not mentally retarded and functioned in a range of average intelligence, and that most of Bradley's answers were purposely vague, involving "some skill ... to do ... consistently," trial judge's failure to direct further examination to determine Bradley's competency did not constitute an abuse of discretion); *State v. Drayton,* 270 S.C. 582, 584, 243 S.E.2d 458, 459 (1978) (wherein Supreme Court held trial judge's failure to sua sponte order

examination of defendant to determine competency did not violate § 44–23–410 nor deprive defendant of due process where trial judge had before him the order of the previous presiding judge finding, about two and one-half months earlier, that defendant was at that time fit to stand trial, while contending that defendant was not competent to stand trial, his counsel clearly refused to demand a further competency hearing, and record failed to show additional facts warranting further examination of defendant).

**AFFIRMED.**

GOOLSBY and STILWELL, JJ., concur.