641 S.E.2d 912

**The STATE, Respondent,**

v.

**Cedric A. COLDEN, Appellant.**

**No. 4207.**

Court of Appeals of South Carolina.

Submitted Feb. 1, 2007.
Decided Feb. 20, 2007.

Appellate Defender Aileen P. Clare, Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, of Columbia; and Solicitor Barbara R. Morgan, of Aiken, for Respondent.

ANDERSON, J.:

Cedric Ali Colden appeals his conviction for kidnapping, armed robbery, and murder. Colden argues the trial court

erred in denying his motion for a continuance and refusing to order a mental competency evaluation. We affirm.[1]

## *FACTUAL/PROCEDURAL BACKGROUND*

On December 21, 2003, Cedric Ali Colden was involved in the kidnapping and armed robbery of Alexander Gorman, as well as the kidnapping, armed robbery, and murder of Christopher Carroll. Colden was arrested and detained shortly thereafter.

Colden's trial was initially scheduled for Aiken County's September 7 and 14, 2004 terms of court. Just before the trial was set to begin, in late August of that year, Colden changed lawyers. He released his public defender and hired private counsel, who he believed "would have the time to put into the case and focus on it and not be overloaded."

On September 7, the day the case was scheduled to be called, Colden's recently retained attorneys moved for a continuance, relying primarily upon the fact they had become involved in the case only ten days earlier. Further, they indicated discovery motions had been recently filed and they did not know, at the present time, what evidence or witnesses would be involved in the trial. The deputy solicitor stated that he would like to try the case during the October 18 term; however, Colden's counsel responded that "given the seriousness of the case," they felt four to five additional weeks was too short a time to allow for proper preparation. The trial judge ordered the case carried over until the October 18 term, although subsequent discussions between the two sides would later move the case to the October 25 term of court.

On October 6, Colden's lawyers moved for another continuance, asking the case be set for December. Emphasizing the severity of the charges against their client, Colden's counsel argued they had not had sufficient time to prepare and noted they had not yet received or reviewed the police investigation notes regarding the case. Additionally, the attorneys inculcated that Colden had recently provided them with the name of an "exoneration" witness whom they were uncertain they

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

would be able to locate and interview within the next nineteen days.

In response, the solicitor stressed that the date was originally set for the September term of court and Colden's prior counsel, the assistant public defender, had been notified two terms prior that the case would be called at that time. He emphasized it was Colden who waited until late August to make the decision to retain new representation. Additionally, the prosecutor indicated he would provide Colden with all discovery the State possessed.

The judge denied the motion for a continuance. However, he noted that if another issue material to the defense developed, particularly one involving the witness Colden had not yet located, he would consider changing his ruling. Although they provided no new information, Colden's attorneys renewed the motion for continuance at both the beginning and end of the trial. The motions were denied.

During a motion hearing on October 6, Colden's counsel moved for an order for a competency and criminal responsibility evaluation. Colden's lawyers declared: "Oftentimes when we talk to Mr. Colden, he is not really responsive to the questions that we put to him. He has a tendency sometimes to ramble on with things that are unrelated to our discussions." The prosecution objected, asseverating they did not know of any reason why Colden should be evaluated.

Colden was subject to *voir dire* by the judge. The colloquy with the court included discussion about his family and childhood. Colden provided rational responses regarding his age (thirty-three) and education (high school graduate). He described and discussed his four years of service in the Navy, previous job at a fiberglass plant, and work selling automobiles.

Mrs. Jennings, Colden's maternal grandmother, took part in the *voir dire*. After providing some brief information about her grandson's family background, she testified she had not noticed Colden needed a doctor, although she had asked for someone, such as a minister, to speak with him. Similarly, Ms. Dickerson, Colden's girlfriend of four years, stated she had requested for a social worker to see Colden. Dickerson believed, at the time he was first arrested, Colden had "a lot

of angry feelings, probably family-wise, that should have been resolved years ago that weren't." Colden informed the court that he had not received any mental counseling, but had participated in an Alcohol and Drug Safety Program in 1994 and completed an Alcoholics Anonymous class in 1995.

Colden's criminal record was discussed. His only prior offenses were relatively minor, magistrate-level misdemeanors, handled without the assistance of counsel. The judge covered the various actors within the trial setting. Colden stated he understood the trial judge was there to "listen to both parties' sides" and the jury "basically decide[d] whether you're guilty or not. . . ." He explained his lawyers' duty was to "represent [him] to the best of their ability." When the judge elucidated the specific role of the solicitor as being the person who would present witnesses and evidence to try to convince the jury of his guilt, Colden replied that he comprehended.

Colden advised the court that he was aware he was being charged with one count of murder and two counts of armed robbery and kidnapping. He described armed robbery as "basically robbing somebody . . . with a weapon and so forth" and kidnapping as "abducting somebody." Colden affirmed he understood the need to talk with his lawyers regarding witnesses and facts. He stated he had not yet discussed with his attorneys what the state would have to prove at trial for him to be convicted. Colden reported he, "for the most part," understood the things his counsel and the court had gone over with him.

In support of their request, Colden's attorneys vouched they had explained to their client the role of the judge, burdens of proof, and elements the solicitor would have to prove, and Colden's inability to better discuss these issues with the judge left "no doubt" a competency evaluation should be performed. Counsel admitted to the court their client's demeanor during the hearing was similar to what they had observed earlier, but added that at times Colden was "not very responsive or would ramble on about something that may not be relevant to the questions that were asked." They asked the court to look past his answers and consider his "herky, jerky movement" and inability to know what to do with his hands. Counsel

conceded they felt Colden potentially understood what was happening, but felt the potential sentence of life without parole supported the need for the evaluation and should be made "out of a precaution."

In response, the solicitor offered that during the judge's questioning, Colden "answered very rationally and thoughtfully" and noted "his ability to speak and his ability to enunciate and his ability to answer questions." Although acknowledging he had no way of knowing if Colden suffered from any "unsurfaced mental illness," he stated nothing in his investigation indicated its existence. The solicitor opined that he detected a "level of [mental] competence" in Colden and requested the evaluation be refused.

The court determined Colden to be "a very articulate, intelligent young man," and, noting his "good grasp of dates and history," found him "to be probably more lucid and articulately aware of his surroundings and proceedings against him than a number of defendants seen when this issue is raised." The judge felt Colden maintained good eye contact, "seem[ed] fairly relaxed in answering questions about his past," and appeared to be very forthright with court. In conclusion, the court held:

> I detected nothing here today that would, I believed, indicate the need for further evaluation or any evaluation. I do certainly have a lot of respect for Mr. Simmons and Mr. Grant and their abilities as lawyers, but without something specific in terms of his behavior as well as his inability to assist you all, at this point especially, I do not believe I have before me—I'm going to deny any of the [McNaughten] issues. Again, I think the burden is on the defense to bring that forward. At this point, that has not been brought forward. It was not really argued to the court by counsel nor his grandmother and fiancé raised anything in my questioning of them related to either issue, his competency at this time or anything in his past that might indicate some mental health issues. There was just no indication at this point in time that would cause the court to inquire an evaluation.

The motion for a mental evaluation was denied.

At the outset of the trial, prior to jury selection, Colden's attorneys renewed their request for a competency evaluation.

This, as well as another re-assertion of the motion just before jury instructions, was refused. In expounding upon his decision, the trial judge stated:

> The previous motion for a psychological evaluation was denied, and I stand by that ruling as well and, again, note that I do believe that based on the court's interview of Mr. Colden a few weeks ago as well as his time in this courtroom during the course of this trial, I do not believe that any psychological evaluation was needed.

## STANDARD OF REVIEW

The granting of a motion for a continuance is within the sound discretion of the trial court and will not be disturbed absent a clear showing of an abuse of discretion. *State v. Tanner*, 299 S.C. 459, 462, 385 S.E.2d 832, 834 (1989); *State v. Mansfield*, 343 S.C. 66, 72, 538 S.E.2d 257, 260 (Ct.App.2000); *State v. White*, 311 S.C. 289, 293, 428 S.E.2d 740, 742 (Ct.App. 1993). Reversals for the denial of a continuance "are about as rare as the proverbial hens' teeth." *State v. McMillian*, 349 S.C. 17, 21, 561 S.E.2d 602, 604 (2002) (citing *State v. Lytchfield*, 230 S.C. 405, 409, 95 S.E.2d 857, 859, (1957)).

The ordering of a competency examination is within the discretion of the trial judge. *State v. Drayton*, 270 S.C. 582, 584, 243 S.E.2d 458, 459 (1978); *State v. Singleton*, 322 S.C. 480, 483, 472 S.E.2d 640, 642 (Ct.App.1996). The refusal to grant such an examination will not be disturbed on appeal absent a clear showing of an abuse of that discretion. *Drayton*, 270 S.C. at 584, 243 S.E.2d at 459; *State v. Buchanan*, 302 S.C. 83, 85, 394 S.E.2d 1, 2 (Ct.App.1990). "This is so, because the determination of whether there is 'reason to believe' a defendant lacks a certain mental capacity necessarily requires the exercise of discretion." *State v. White*, 364 S.C. 143, 147–48, 611 S.E.2d 927, 929 (Ct.App.2005) (citing and quoting *State v. Bradshaw*, 269 S.C. 642, 644, 239 S.E.2d 652, 653 (1977)).

An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law. *State v. Irick*, 344 S.C. 460, 464, 545 S.E.2d 282, 284 (2001); *State v. Funderburk*, 367 S.C. 236, 239, 625 S.E.2d 248, 249–50 (Ct.App.2006). If there is any

evidence to support the trial judge's decision, the appellate courts will affirm it. *State v. Wilson,* 345 S.C. 1, 7, 545 S.E.2d 827, 829 (2001); *State v. Taylor,* 360 S.C. 18, 598 S.E.2d 735 (Ct.App.2004). Even without any evidentiary support, "[i]n order for an error to warrant reversal, the error must result in prejudice to the appellant." *State v. Preslar,* 364 S.C. 466, 473, 613 S.E.2d 381, 385 (Ct.App.2005); *see also State v. Beck,* 342 S.C. 129, 536 S.E.2d 679 (2000); *State v. Wyatt,* 317 S.C. 370, 453 S.E.2d 890 (1995) (error without prejudice does not warrant reversal).

## *LAW/ANALYSIS*

### A. Continuance

█ Colden argues the trial court abused its discretion by rejecting his motion for a continuance. He alleges his guarantee of effective assistance of counsel required the continuance because his attorneys: (1) were retained approximately two months prior to trial; (2) only recently learned of a potential "exoneration" witness they had not yet been able to locate; (3) did not have ample opportunity to interview witnesses; and (4) had not received or reviewed the state's evidence or "critical" police investigation notes. We disagree.

The South Carolina Rules of Criminal Procedure state:

No motion for continuance of trial shall be granted on account of the absence of a witness without the oath of the party, his counsel, or agent to the following effect: the testimony of the witness is material to the support of the action or defense of the party moving; the motion is not intended for delay, but is made solely because he cannot go safely to trial without such testimony; and has made use of due diligence to procure the testimony of the witness or of such other circumstances as will satisfy the court that his motion is not intended for delay.

(1) When a subpoena has been issued, the original shall be produced with proof of service or the reason why not served endorsed thereon or attached thereto; or if lost the same proof shall be offered with additional proof of the loss of the original subpoena.

(2) A party applying for such postponement on account of the absence of a witness shall set forth under oath in

addition to the foregoing matter what fact or facts he believes the witness if present would testify to and the grounds for such belief.

Rule 7(b), SCRCrimP.

The granting or denial of a motion for a continuance is within the sound discretion of the trial judge. *State v. Babb*, 299 S.C. 451, 454, 385 S.E.2d 827, 829 (1989) (citing *State v. Dingle*, 279 S.C. 278, 306 S.E.2d 223 (1983)). Our appellate courts have shown great deference to trial judges in this matter. *See State v. Nicholson*, 366 S.C. 568, 623 S.E.2d 100 (Ct.App.2005) (no abuse of discretion in denial of alternate motion for a continuance to obtain new expert witness on characteristics of sexual abuse victim after the state, shortly before trial, gave notice to defense "as a professional courtesy" where it was not required to provide the information either under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) or Rule 5, SCRCrimP); *State v. Asbury*, 328 S.C. 187, 493 S.E.2d 349 (1997) (finding no abuse in denying a continuance in a second trial where the first trial transcript would be beneficial, but not essential, and where backup tapes were available and could have been used for impeachment purposes; *but see McMillian*, 349 S.C. 17, 561 S.E.2d 602 (holding the trial judge abused his discretion in denying a continuance request to obtain a transcript of first trial to use in impeaching a witness where retrial occurred only two weeks later, no backup tapes were available, and the credibility of the "retrial" witness was shown to be crucial).

In *State v. McKennedy*, 348 S.C. 270, 559 S.E.2d 850 (2002), our Supreme Court found the defendant was not entitled to a continuance. Like the present case, the defendant merely referred to a neighbor he hoped to interview, but did not name the witness or indicate how that witness would be beneficial to his case. McKennedy, who had less than one month to prepare for trial, argued he may have been able to produce additional witnesses, but could not make a specific showing of how any additional time would have been beneficial to his case. The Supreme Court took note that it "has repeatedly upheld denials of motions for continuances where there was no showing that any other evidence on behalf of the defendant could have been introduced, or that other points could have been raised, if more time had been granted to prepare for trial."

*McKennedy,* 348 S.C. at 280, 559 S.E.2d at 856 (citing *State v. Williams,* 321 S.C. 455, 459, 469 S.E.2d 49, 51 (1996)).

The court, in *Skeen v. State,* 325 S.C. 210, 481 S.E.2d 129 (1997), looked at defense counsel's failure to request a continuance. It determined there was no error because there was no evidence presented that additional time to prepare would have made any possible impact on the result. In that case, counsel declared he would have liked to have consulted with his own medical expert to help him prepare for the cross-examination of a witness for the state, but could not suggest how this would have ultimately made any difference. The court noted its reliance upon *Bozeman v. State,* 307 S.C. 172, 414 S.E.2d 144 (1992), and *State v. Motley,* 251 S.C. 568, 164 S.E.2d 569 (1968), where it found "no reversible error because the petitioner did not point to any other evidence or witnesses which could have been produced if a continuance had been granted." *Skeen,* 325 S.C. at 214, 481 S.E.2d at 132; *see also State v. Register,* 323 S.C. 471, 482, 476 S.E.2d 153, 160 (1996) (no abuse of discretion in denying a continuance where counsel waited until one month prior to trial to investigate DNA evidence).

Regarding the issue of the "exoneration" witness, whose existence Colden's counsel claimed at the October 6 hearing to have only recently been made aware, the record is silent as to whether they were still pursuing this witness at the time of the trial. Despite the fact the judge expressly left the door open for reconsideration of the request for a continuance for the lack of this witness, at no time during the motions to continue, both before and at the conclusion of the trial, did Colden expressly state the name or need for this or any other witness. His attorneys' concern about the witness was inadequate to support a motion for a continuance. All components of Rule 7(b), SCRCrimP, including that of the attestation under oath, are strictly required, and a party asking for a continuance must show due diligence in trying to procure the testimony of the witness, as well as what the party believes the absent witness would testify to and the basis for that belief. *See State v. White,* 311 S.C. 289, 292, 428 S.E.2d 740, 742 (Ct.App.1993) (holding a continuance was not required where there was no compliance with Rule 7(b), SCRCrimP after an expert witness unexpectedly went on vacation and

neither the defendant nor counsel offered under oath what facts they believed the absent witness would have testified, the grounds for that belief, that the continuance not intended to delay, or that due diligence was used in their efforts to make the witness available). It is paramount that the party asking for the continuance show "due diligence" was used in trying to procure the absent witness. *See State v. Yarborough*, 363 S.C. 260, 266, 609 S.E.2d 592, 595–96 (Ct.App.2005) (witness's sudden decision not to cooperate did not mandate a continuance where no evidentiary hearing was necessary and, alternatively, where due diligence in asserting an attempt to acquire affidavits was not shown). Not only was there no showing that by the time of trial counsel had been unable to locate the unnamed witness, but it is evident that the requirements of Rule 7(b) were never satisfied.

 The record reveals Colden's counsel had adequate time to investigate. As the court noted at the very outset of the trial, the case had previously been continued from two earlier start dates. Colden's trial attorneys were hired on August 28, ten days before the September 7 motion hearing. At that time, the public defender's office had participated in a preliminary hearing on July 7. A transcript of the hearing had been filed in the clerk of court's office on July 16. During this proceeding, Colden's attorneys complained that the police report had not been received. This record was thoroughly reviewed at the hearing and essentially revealed the entirety of the state's case ultimately presented at trial. Furthermore, the trial did not begin until October 27, nearly two months after Colden's counsel had been retained.

A plethora of pre-trial motions reveals the depth of the attorneys' understanding of the nature of both the State's and defense's cases, and the opening statement reveals a strong knowledge of the prosecution's strategy. During trial, Colden's attorneys presented a number of complicated and detailed motions and objections that, in order to make, required a thorough understanding of the case and a familiarity with the police investigation notes. Their request for the jury to view the crime scene rather than rely on a video representation shows a strong grasp of the facts of the case. The trial court noted: "Colden has been represented more than ably by two very experienced and two very good attorneys. Y'all did

a very good job in defending Mr. Colden." Thus, the lawyers' very performance further eviscerates the argument that Colden was denied effective assistance of counsel. The request for a continuance lacked foundation.

## B. Competency Evaluation / Competency to Stand Trial

■ Colden contends the trial court erred in denying his attorneys' request that a mental examination for competency to stand trial be ordered. Because his attorneys opined their conversations with him "had been disjointed and confused," that there had been difficulty communicating with him, and that he frequently gave non-responsive answers and "rambled on," Colden asserts he was entitled to the evaluation. He takes the position that the "defense counsel's representations alone should have invoked S.C. § 44–23–410" because, due to their "frequent conversation and interaction" with him, the attorneys were in a unique and better position to evaluate his ability to assist them with his case. He opines their concern about his capacity was supported by the uncharacteristic nature of the charge since he had a relatively clean record until he was thirty-three years old. Finally, he avers that since the issue was raised "well before trial" (three weeks prior), the prosecution would not have suffered any harm had the evaluation been ordered, and it was therefore an abuse of discretion to deny the request. We disagree.

■ "Due process of law prohibits the conviction of a person who is mentally incompetent." *Jeter v. State,* 308 S.C. 230, 232, 417 S.E.2d 594, 595 (1992) (citing *Bishop v. United States,* 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956)); *State v. Singleton,* 322 S.C. 480, 482, 472 S.E.2d 640, 641 (Ct.App. 1996). South Carolina law provides:

> Whenever a judge . . . has reason to believe that a person on trial before him, charged with the commission of a criminal offense or civil contempt, is not fit to stand trial because the person lacks the capacity to understand the proceedings against him or to assist in his own defense as a result of a lack of mental capacity, the judge shall:
>
> (1) Order examination of such person by two examiners designated by the Department of Mental Health or the Mental Retardation Department or both. . . .

S.C.Code Ann. § 44–23–410 (2002). Thus, if the judge believes the person may be unfit to stand trial, a competency evaluation is compulsory. *See State v. Locklair,* 341 S.C. 352, 535 S.E.2d 420 (2000) (finding the trial judge correctly ordered a competency evaluation where he felt the mental condition of the defendant might be called into question at trial and the defense stated it intended to offer expert testimony that the defendant suffered from a mental condition). However, great deference is given to trial judge who sits in a better position to ascertain the defendant's faculties. *See State v. Weik,* 356 S.C. 76, 587 S.E.2d 683 (2002) (holding the court did not err in refusing to order a second competency evaluation where deference was given to the trial judge who was able to view the appellant's demeanor); *State v. Kelly,* 331 S.C. 132, 502 S.E.2d 99 (1998); *State v. Bell,* 293 S.C. 391 360 S.E.2d 706 (1987).

In *State v. Burgess,* 356 S.C. 572, 590 S.E.2d 42 (Ct.App. 2003), this court identified three factors to be considered in determining whether further inquiry into a defendants' fitness to stand trial was warranted. These are: (1) evidence of irrational behavior; (2) demeanor at trial; and (3) prior medical opinion regarding ability to stand trial. In some instances, the presence of just one of the factors may justify further inquiry requiring a mental evaluation. In *Burgess,* the defendant's demeanor during the motion was very appropriate and at the hearing she understood the proceedings, the roles of the various trial participants, and the charges leveled against her. "Beyond counsel's statements regarding his inability to talk intelligently with Burgess and his opinion that she could not assist in her defense, counsel offered nothing to demonstrate that Burgess's mental retardation was such as to render her unfit for trial." *Burgess,* 356 S.C. at 576, 590 S.E.2d at 44. This court noted the trial judge did not experience any difficulty in conversing with Burgess and her testimony at a *Jackson v. Denno* hearing "seem[ed] to undercut any question of her competency." *Id.*

This case has great similarities to the situation in *Burgess.* The reasoning behind the competency request did not rely upon any pre-existing history of mental illness (although in *Burgess* the defendant was mentally handicapped), but was instead based upon a perceived difficulty counsel faced in discussing matters with their client. Colden's *voir dire* con-

clusively revealed his ability to answer questions rationally, appropriately, and on point. He demonstrated a manifest understanding of the proceedings, the roles of the various participants, and the charges he was facing. Colden's counsel offered nothing to demonstrate that his mental state was such as to render him unfit for trial. As in *Burgess*, the court's questioning of Colden in the pre-trial voir dire, his examination during a *Jackson v. Denno* hearing, and the court's inquiry during the waiver of his right to testify, indicated that Colden had no difficulty conversing effectively. Similarly, pre-existing evidence of the audiotaped statement of Colden did not raise any mental health concerns. Finally, the trial court's assessment of Colden's demeanor throughout the trial was supportive of the court's conclusion that the evaluation was not required.

There was no evidence of irrational behavior before or during the trial, nor prior medical opinion concerning competency as to require an evaluation under the *Burgess* factors. Both after the hearing at the outset of the trial and at the close of the evidence, the trial judge specifically articulated that he saw nothing to indicate a need for an evaluation or any indication of a mental issue, past or present. Pellucidly, a review of the record and circumstances brings us to the ineluctable conclusion that the trial judge did not abuse his discretion in denying the motion.

## CONCLUSION

The trial judge did not abuse his discretion in denying Colden's motion for a continuance. This denial was supported by the facts and mandated by the law. Absent any showing of the existence of a mental illness, the court properly denied Colden's counsel's request for a mental examination for competency to stand trial. Accordingly, Colden's convictions are

**AFFIRMED.**

KITTREDGE and SHORT, JJ., concur.