515 S.E.2d 525

**The STATE, Respondent,**

v.

**John Samuel BURDETTE, Appellant.**

No. 24929.

Supreme Court of South Carolina.

Heard Feb. 4, 1999.

Decided April 5, 1999.

Assistant Appellate Defender Aileen P. Clare, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Caroline Callison Tiffin; and Solicitor Warren B. Giese, all of Columbia, for respondent.

TOAL, Justice:

John Samuel Burdette ("Defendant") appeals his convictions for assault and battery of a high and aggravated nature (ABHAN), first degree burglary, and his mandatory life sentence without parole imposed under S.C.Code Ann. § 17–25–45 (Supp.1998). We affirm.

### Factual/Procedural Background

At approximately 7:00 p.m. on February 13, 1996, Defendant and his accomplice Don Robinson entered the house of Nathan Tarte ("Victim"), age 95, and Aida Tarte ("Victim's Wife"), age 85, At that time, Victim's Wife was on the telephone with her daughter. Defendant and Robinson physically attacked Victim and threw him to the ground. Robinson then took the portable phone from Victim's Wife as she spoke to her daughter and used it to beat her about the head and face. Robinson then left the house with the telephone and Defendant followed shortly thereafter.

As Robinson stood in the front yard following the attack, his presence caught the attention of a neighbor across the street. The neighbor testified that Robinson waited in the front yard until Defendant came out of Victim's residence and then the two of them left together. The neighbor heard screams coming from Victim's house and went across the street to investigate. He found Victim and Victim's Wife injured and the police were called immediately. Based on a description

given by the neighbor, the police apprehended Defendant and Robinson in the neighborhood shortly after the attack.

The State indicted Defendant for burglary in the first degree and two counts of ABHAN. A jury found him guilty on all counts and the trial court sentenced Defendant pursuant to S.C.Code Ann. § 17–25–45 (Supp.1998).[1] Due to Defendant's previous conviction for armed robbery in 1979, the conviction of first degree burglary triggered section 17–25–45(A), and Defendant received a mandatory life sentence without parole. Defendant appeals his convictions, raising four issues:

1. Did Defendant receive adequate notice of the charges against him under section 17–25–45?

2. Does S.C.Code Ann. § 17–25–45(G) violate the separation of powers doctrine?

3. Were statements made by Victim to police officers following the attack inadmissible hearsay or in violation of the Confrontation Clause?

4. Should the trial court have granted Defendant a directed verdict on the ABHAN charge for the attack on Victim's Wife?

## LAW/ANALYSIS

### I. ADEQUATE NOTICE OF CHARGES

■ Defendant argues that this Court should overturn his sentence because the notice sent to him as required by section 17–25–45 failed to list the indictment number for his first degree burglary charge.[2] We disagree.

The State is required by law to inform a defendant that it plans to apply the recidivist statute. Section (H) of the statute provides:

Where the solicitor is required to seek or determines to seek sentencing of a defendant under this section, written

---

1. This statute is also known as a "two strikes" or "recidivist" statute.

2. From the evidence in the record, it appears that the absence of the first degree burglary indictment number is wholly a clerical mistake. Both ABHAN indictment numbers appeared on the notice.

notice must be given by the solicitor to the defendant and defendant's counsel not less than ten days before trial. S.C.Code Ann. § 17–25–45(H). The statute, however, does not address the content requirement of such notice.

Defendant's position is that S.C. Const. art. I, § 14's requirement that "Any person charged with an offense shall enjoy the right ... to be fully informed of the nature and cause of the accusation" mandates that the notice include a listing of the offenses which trigger the two strikes law, or else the notice is constitutionally insufficient. Defendant claims that without a listing of the charges triggering the recidivist statute's application, he could not be "fully informed" of the nature of the charges against him.[3] We disagree.

Historically, South Carolina has not required a defendant be informed, even in the indictment, that he was eligible upon conviction to be punished more severely on the basis of previous convictions in his record. *See State v. Stewart,* 275 S.C. 447, 272 S.E.2d 628 (1980) (holding that a defendant was not entitled to notice prior to the application of a mandatory sentence under S.C.Code Ann. § 17–25–40 (1976) (repealed), the predecessor statute to section 17–25–45); *see also State v. Parris,* 89 S.C. 140, 141, 71 S.E. 808, 809 (1911) ("The indictment need not state whether it is for the first or second offense, though the second offense, in that case, was punishable with death, while the first offense was punishable only with whipping.").[4] Thus, under our constitution there would be no duty to inform Defendant about seeking the statute's application. The duty, if any, would have to be set forth in the notice provision of the recidivist statute.

The indictment, along with the notice that the recidivist statute would apply, satisfied the fully informed requirement of S.C. Const. article I, sec. 14. Once the indictment informs a defendant of the charges against him, section 17–25–45(H)

---

3. The notice did include Defendant's 1979 armed robbery conviction.

4. The only time such information has been required to be included in the indictment has been where the information is necessary to establish jurisdiction of the court. *See Tyler v. State,* 247 S.C. 34, 145 S.E.2d 434 (1965) ("[T]he allegation of the indictment that the crime charged was a second or subsequent offense was necessary to show the jurisdiction of the court.").

only requires the solicitor to inform the defendant that the recidivist sentencing statute will be applied upon conviction. Specifically listing the triggering charge from the current case is unnecessary because Defendant has been fully informed of the charges against him in the indictment, and he has been informed that the State will apply the recidivist statute. Determining which of the indicted offenses triggers the statute merely requires looking at the list of offenses listed in section 17–25–45.

## II. SEPARATION OF POWERS

■ Defendant argues that the mandatory nature of section 17–25–45(G) renders it a violation of the separation of powers doctrine.[5] We disagree.

■ Defendant cites *State v. Thrift*, 312 S.C. 282, 440 S.E.2d 341 (1994), for the proposition that:

Under the separation of powers doctrine, which is the basis for our form of government, the Executive Branch is vested with the power to decide when and how to prosecute a case. Both the South Carolina Constitution and South Carolina case law place the unfettered discretion to prosecute solely in the prosecutor's hands. The Attorney General as the State's chief prosecutor may decide when and where to present an indictment, and may even decide whether an indictment should be sought. Prosecutors may pursue a case to trial, or they may plea bargain it down to a lesser offense, or they can simply decide not to prosecute the offense in its entirety.

*Id.* at 291–92, 440 S.E.2d at 346–47. However, section 17–25–45 does not interfere with any of the prosecutorial rights enumerated in *Thrift*. Under the mandatory sentencing guidelines, the prosecutor can still choose not to pursue the triggering offenses or to plea the charges down to non-triggering offenses. Choosing which crime to charge a defendant with is the essence of prosecutorial discretion, not choos-

---

5. "In the government of this State, the legislative, executive, and judicial powers of the government shall be forever separate and distinct from each other, and no person or persons exercising the functions of one of said departments shall assume or discharge the duties of any other." S.C. Const. art. I, § 8.

ing which sentence the court shall impose upon conviction. *See U.S. v. Washington,* 109 F.3d 335, 338 (7th Cir.1997) ("If one person shoots and kills another, a prosecutor may charge anything between careless handling of a weapon and capital murder.").

If a defendant is convicted of one of the triggering offenses, the matter of sentencing becomes the province of the legislature. "We have held in the past that the penalty assessed for a particular offense is, except in the rarest of cases, 'purely a matter of legislative prerogative,' and the legislature's judgment will not be disturbed." *State v. De La Cruz,* 302 S.C. 13, 15, 393 S.E.2d 184, 186 (1990); *see also State v. Smith,* 275 S.C. 164, 167, 268 S.E.2d 276, 277 (1980). In the current case, the legislature has designated life in prison without parole as the appropriate sentence for Defendant based on his criminal convictions. The imposition of that sentence does not violate the separation of powers doctrine.

## III. TESTIMONY OF POLICE OFFICER/VICTIM'S STATEMENT TO THE POLICE

Defendant argues that Victim's statement to police officers constituted inadmissible hearsay evidence. We disagree. Defendant further claims that even if the statement was not inadmissible hearsay that it violated the Confrontation Clause of the federal Constitution. We disagree.

### A. Hearsay

■ The trial court found that Victim's statements to the police immediately following the attack were allowable under either Rule 803(1), SCRE, as a present sense impression or Rule 803(2), SCRE, as an excited utterance. We agree that the statement qualifies as an excited utterance.

The hearsay exceptions of present sense impression and excited utterance have replaced the *res gestae* hearsay exception in South Carolina law.[6] In the current case, Victim's

---

6. Our Court of Appeals recently summarized the status of the former South Carolina *res gestae* exception to the hearsay prohibition. They explained:

Prior to the adoption of the Rules of Evidence, South Carolina law provided for a *res gestae* exception to the hearsay rule. Under this

statement to the police immediately after the attack qualifies under the excited utterance exception to the hearsay prohibition. "The rationale for the [excited utterance] exception lies in the special reliability accorded to a statement uttered in spontaneous excitement which suspends the declarant's powers of reflection and fabrication." *Blackburn,* at 327, 247 S.E.2d at 336. In *Blackburn,* this Court found that "to qualify as part of the res gestae, the [excited] utterance need only be 'substantially contemporaneous' with the transaction." *Id.,* at 328, 247 S.E.2d at 336. In an analysis of the excited utterance exception in Rule 803 of the Federal Rules of Evidence, the *Blackburn* Court found the victim's statement given to police approximately one hour after the event "would qualify as an

---

exception, a hearsay statement was admissible if the statement was substantially contemporaneous with the litigated transaction and was the spontaneous utterance of the mind while under the active, immediate influence of the event. [Citations omitted]

However, there is no single *res gestae* exception included in the South Carolina Rules of Evidence. Instead, the Rules establish a "present sense impression" exception, which makes admissible a hearsay "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter," Rule 803(1), SCRE, and an "excited utterance" exception, which makes admissible a hearsay "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Rule 803(2), SCRE. These exceptions are identical to those contained in the Federal Rules of Evidence. See Reporter's Note, Rule 803, SCRE.

Comparing the exceptions under the Rules to the pre-Rules res gestae exception, it is apparent that the former res gestae exception largely combined the current requirements of subsections (1) and (2). *See Blackburn,* 271 S.C. at 329, 247 S.E.2d at 337 ("Under state practice, ... the statement must be both an excited utterance and a present sense impression to be admitted as a part of the *res gestae.*"). Thus, a statement that satisfied one subsection but not the other would not have been admissible under the former *res gestae* exception, but is now admissible under the Rules. *See* Reporter's Note, Rule 803, SCRE (Rules 803(1) and 803(2) "constitute a change in South Carolina law. Previously, a statement had to meet the conditions of both subsections (1) and (2) before it would be admissible under the *res gestae* exception to the hearsay rule."). Nonetheless, given that the pre-Rules *res gestae* cases contained the essential requirements of Rule 803(1) and Rule 803(2), those cases remain helpful when determining whether a statement is admissible under the Rules.

*State v. Burroughs,* 328 S.C. 489, 498–99, 492 S.E.2d 408, 412–414 (Ct.App.1997).

excited utterance and be admissible under [that] exception." [7]

The record indicates that there could have been no more than one hour between the attack on Victim and Victim's Wife and Victim's statement to the testifying police officer. While "[t]here are no hard and fast rules as to when the *res gestae* ends," *State v. Harrison*, 298 S.C. 333, 336, 380 S.E.2d 818, 820 (1989), this Court has generally allowed as excited utterances statements made by the victim to the police immediately following a physical attack. *See State v. Sims*, 304 S.C. 409, 405 S.E.2d 377 (1991) (allowing statements made to police under *res gestae* exception where the officer had proceeded directly to the scene attack upon it being reported); *State v. Harrison*, 298 S.C. 333, 380 S.E.2d 818 (1989) (allowing as *res gestae* the statements of an alleged rape victim to an officer at the hospital upon first opportunity to tell what had occurred to her); *State v. Blackburn*, 271 S.C. 324, 247 S.E.2d 334 (1978) (noting that a time interval of over one hour, and up to eleven hours, did not necessarily eliminate a statement as part of the *res gestae* ); *State v. Quillien*, 263 S.C. 87, 207 S.E.2d 814 (1974) (concluding a rape victim's statements to police when she arrived at the emergency room were admissible under the *res gestae* exception); *State v. Dennis*, 321 S.C. 413, 468 S.E.2d 674 (Ct.App.1996) (allowing statements made to the police and nurse where the record indicated there was no appreciable time lapse between the attack and the statements); *see also State v. Burroughs*, 328 S.C. 489, 492 S.E.2d 408 (Ct.App.1997) (excluding statements made to the investigating officer and a nurse where the statements were made approximately ten hours after the incident and victim expressly acknowledged she had time to reflect upon the events).

■ Whether a statement is admissible under the excited utterance exception to the hearsay rule depends on the circumstances of each case and the determination is generally

---

7. In *Blackburn*, although the statement qualified as an excited utterance, the court still excluded it. The Court found: "It is the very nature of [the victim's] statement which renders it inadmissible under the *res gestae* exception. The declarant was stating her opinion as to Why the assault occurred rather than giving a factual account of How it occurred." *Blackburn*, 271 S.C. at 328, 247 S.E.2d at 337. In the present case, Victim clearly provided a factual account of how the attack occurred.

left to the sound discretion of the trial court. *See State v. Harrison*, 298 S.C. 333, 380 S.E.2d 818 (1989). In the current case, Victim and his wife had recently suffered a physical attack and his statement to the police fell within the time frame previously allowed in the case law. We agree with the trial court's conclusion that Victim's statement qualified as an excited utterance.

## B. Confrontation Clause

Defendant argues that even if the statement qualifies as an exception to the hearsay prohibition, it was still impermissible because the testimony violated the Confrontation Clause of the United States Constitution. We disagree.

 Defendant is correct that the hearsay exceptions and the Confrontation Clause of the United States Constitution are not identical in their application. *See Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *State v. Hutto*, 325 S.C. 221, 226 n. 7, 481 S.E.2d 432, 434 n. 7 (1997). Hearsay statements are admissible under the Confrontation Clause where the statement bears adequate "indicia of reliability." *Idaho v. Wright*, 497 U.S. 805, 813, 110 S.Ct. 3139, 3145, 111 L.Ed.2d 638, 651 (1990). Such reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. *Id.* at 814–16, 110 S.Ct. at 3146–47, 111 L.Ed.2d at 652–53. The admissibility of Victim's statement to the police depends on whether his statements, as excited utterances, bear adequate indicia of reliability.

The United States Supreme Court has held that the excited utterance exception is a "firmly rooted" hearsay exception. *See White v. Illinois*, 502 U.S. 346, 355 n. 8, 112 S.Ct. 736, 742 n. 8, 116 L.Ed.2d 848 (1992) ("The exception for spontaneous declarations is at least two centuries old, and may date to the late 17th century."). The concept of *res gestae* has been an exception to the hearsay prohibition in South Carolina for over 100 years. *See State v. Talbert*, 41 S.C. 526, 19 S.E. 852 (1894) (allowing hearsay statements made by deceased immediately after he had been shot). Defendant argues that Rule 803, SCRE dividing up the *res gestae* exception in 1995 into two distinct exceptions undermined its status as "firmly rooted" in South Carolina law. Defendant believes that since the excited

utterance exception has stood on its own for only a few years, that it does not bear the indicia of reliability necessary to satisfy the Confrontation Clause. We disagree.

The reason excited utterances are allowed as an exception to the hearsay prohibition is that they bear the indicia of reliability required by the second element of the Confrontation Clause analysis. *See State v. Hill,* 331 S.C. 94, 501 S.E.2d 122 (1998) ("The rationale behind the excited utterance exception is that the startling event suspends the declarant's process of reflective thought, thus reducing the likelihood of fabrication."). Excited utterances would therefore have the indicia of reliability no matter how long that exception has stood on its own in South Carolina. Defendant offers no argument against the philosophy or theoretical basis of the exception, only that it has not had enough time on its own to become "firmly rooted." We disagree and find that the excited utterance exception is firmly rooted in South Carolina law and satisfies the requirements of the Confrontation Clause.

## IV. DIRECTED VERDICT

Defendant argues that the trial court erred in not directing a verdict in his favor on the ABHAN charge based on the attack against Victim's Wife. He argues that because Victim's Wife told the police she was attacked by a black man and Defendant is white, that there was no evidence to support the charge against him and therefore the trial court should have granted a directed verdict. We disagree.

There is evidence that Defendant and Robinson arrived together, entered the house together, that Defendant attacked Victim while Robinson attacked Victim's Wife, that the house was burglarized, and that Defendant and Robinson left together. "When two or more persons aid, abet and encourage each other in the commission of a crime, all being present, each is guilty as a principal." *See Yates v. Aiken,* 290 S.C. 231, 236, 349 S.E.2d 84, 87 (1986), *rev'd on other grounds,* 484 U.S. 211, 108 S.Ct. 534, 98 L.Ed.2d 546 (1988). In the present case, there is substantial evidence that Defendant was involved in the overall commission of the crime. Therefore, Defendant is guilty as a principal for the crimes committed by Robinson against Victim's Wife during their attack.

On a motion for a directed verdict in a criminal case, the trial court is concerned with the existence or non-existence of evidence, not its weight. *State v. Morgan,* 282 S.C. 409, 319 S.E.2d 335 (1984). If the State presents any evidence which reasonably tends to prove defendant's guilt, or from which defendant's guilt could be fairly and logically deduced, the case must go to the jury. *State v. Poindexter,* 314 S.C. 490, 431 S.E.2d 254 (1993). On appeal from the denial of a motion for directed verdict, this Court must view the evidence in a light most favorable to the State. *State v. Schrock,* 283 S.C. 129, 322 S.E.2d 450 (1984). Viewing the testimony concerning Defendant's role in the burglary and assaults in a light most favorable to the State, the trial court correctly refused the directed verdict on this charge.

## CONCLUSION

Based on the foregoing analysis, the decisions of the trial court are **AFFIRMED.**

FINNEY, C.J., MOORE, WALLER, and BURNETT, JJ., concur.