THE STATE OF SOUTH CAROLINA

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State Respondent,
v.
 James Michael Houston Appellant.
 
 
 

Appeal From Pickens County
Larry R. Patterson, Circuit Court Judge

Unpublished Opinion No. 2006-UP-398
Submitted December 1, 2006  Filed December 7, 2006

AFFIRMED

 
 
 
W. Douglas Richardson, Jr., of Easley, for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman M. Rapoport, all of Columbia; and Solicitor Robert M. Ariail, of Greenville, for Respondent.
 
 
 

PER CURIAM:    James Michael Houston (Houston) was convicted of third degree burglary and petit larceny.  He was sentenced to eighteen months for the burglary charge and thirty days for larceny.  Houston appeals, arguing the judge erred in denying his motion for a directed verdict.  We affirm.[1]
FACTS
On the morning of Sunday, March 7, 2004, police responded to a burglary complaint at ZJs Mobile Homes, a business involved in the refurbishing and reselling of used mobile homes.  The police met with the manager, Brenda Dill, and obtained statements from two eyewitnesses, Frank Barnes and Danny Underwood.  The police report indicated a standard mobile home bathtub, white in color, approximately five feet long, and a box containing about six indoor faucets were reported stolen from one of the mobile homes and placed in a green Cadillac.
The two witnesses identified Warren Paul Haney (Haney) and Houston as the perpetrators of the crime.  A four-door, green Cadillac was found to be registered to Houston.  The police did not obtain search warrants for the homes of the two men.  The stolen items were never recovered.  The crime scene was not dusted for fingerprints, as police felt there was no good place in the unfurnished mobile home to check for fingerprints and that the best surface to print was probably the tub itself, which they had carried away . . . .   No other evidence was recovered from the crime scene.  
As a result of the witnesses reports and police investigation, Houston and Haney were arrested and indicted for third degree burglary and petit larceny.  The two men were tried together.
Frank Barnes worked at ZJs performing general remodeling work for more than two years.  Barnes testified that although ZJs is not open on Sundays, on the day in question, Underwood picked him up and drove to ZJs so they could get caught up on some carpet installation they had been asked to perform.  
Barnes testified that when he pulled up at the front entrance to the business, he observed Haney and Houston putting a bathtub from one of the mobile homes into the back of a green Cadillac.  Barnes recognized Haney, because they had worked together at ZJs.  Barnes and Underwood slowed their vehicle but did not stop.  Barnes testified he and Underwood parked near the office and walked back to the mobile home to see the men, but by that point, Haney and Houston were gone.  
Barnes recalled he had recently worked in the mobile home and there was a bathtub either installed or sitting inside the mobile home at the time.  Barnes testified that he had worked in that same mobile home with Haney.  He stated the mobile home was not locked after they finished working in it and that most of the mobile homes at ZJs stayed unlocked.  Barnes also recalled that Haney took his tools with him when they finished their work.  
Danny Underwood also worked at ZJs.  Underwood testified that he had known Haney for approximately 30 years.  Before working at ZJs, Underwood had worked for Haney for around two years and had previously helped Houston with a few projects.
Underwood testified that as soon as he and Barnes drove into ZJs lot, Underwood observed what he recognized as Houstons Cadillac parked in front of a mobile home in which he had been working.  Underwood testified that Houston stood on the steps of the mobile home coming out the door and that Haney was putting the bathtub in the back seat.  Underwood observed them for three or four minutes, trying to ascertain what it was Haney and Houston were doing, but by the time he parked his vehicle and walked to the mobile home, Haney and Houston had left.  
Underwood explained that the bathtub was approximately fifty-three to fifty-four inches long and twenty-six to twenty-seven inches high.  It has only one side, because the rest of it mounts around the wall with screws and brackets.  The tub was made of thin plastic, not fiberglass, so that [y]ou can bow that bathtub so it will fit the wall so you aint got to tear that wall out of the mobile home.  Underwood said the tub would buckle and was flexible, but would not fold up.  Underwood recalled the bathtub was not hanging out the window of the car.  
Underwood testified that he and Haney put the bathtub in the mobile home a week before the burglary.  He said that Haney then quit his job at ZJs.  Underwood said that the bathtub was inside the mobile home on the night before the burglary.  He stated, [W]e set the bathtub in and it was supposed to be installed, but I had to go do something else so I never made it back up there.  So I assumed it was installed, but evidently it hadnt been, because they didnt tear the wall.  He didnt tear the screws or nothing out.  Underwood testified that Haney left no tools in the mobile home, but he left a stepladder, which was still there after the burglary. 
Brenda Dill testified that she hired Haney in November 2003.  He was paid by the job and allowed to bring a helper (Underwood) with him to work.  Dill explained that she and Haney agreed to go separate ways and that Haney left on decent terms.  There was no agreement for Haney to finish any work.  She had never before seen Houston at ZJs.  Dill stated that Houston did not have permission to enter the mobile home and that Haney did not have permission to enter the mobile home after he stopped working there.  
Dill stated that the stolen bathtub cost about two hundred dollars.  The faucets were around thirty-nine dollars.  She explained that every evening when she closes the business, she checks all the mobile homes to make sure the windows and doors are shut.  Dill went through the mobile home and just pulled [the door] shut [and] went to the next one.  She did not lock the door and admitted that all the trailers remain unlocked most of the time.  Dill closed ZJs around four oclock on Saturday.  She was the last person to leave. 
Dill testified that the tub was still in the mobile home when she closed Saturday.  She stated, It was sitting in the slot, in the opening where it belongs, and it was partially in, but not completed . . . .  No plumbing or other installation had been done.  She explained, We may leave things undone in one we dont have a deal working on.  She did not see any tools or a ladder in the mobile home when she walked through it. 
Dill testified that, on past occasions, she had transported these types of bathtubs in the back seat of her mid-sized Chrysler Cirrus.
Houston testified in his own defense.  Houston stated that he sold high-end manufactured and modular homes for the Gallery of Homes in Powdersville.  Houston testified that he drove to ZJs with Haney on the Sunday morning in question so Haney could show [him] the work he had personally done in the kitchen putting the cabinets in this particular home.  He stated that he and Haney went into the mobile home and that Haney retrieved his triangle and a ladder, which he then put in the back seat of the car. Houston believed they were there for about five minutes.  Houston said he saw Barnes and Underwood pull into the lot.  Houston claimed that neither he nor Haney went into the bathroom of the mobile home or put a bathtub in his backseat.  He said the type of tub stolen would not be used in any of his mobile homes.  Houston admitted that he did not have permission to enter the mobile home. 
At trial, Houston moved for a directed verdict in his favor, arguing the evidence did not establish that he intended to commit a crime in the mobile home or that he intended to steal the property.  The judge denied this motion.
STANDARD OF REVIEW
On appeal from the denial of a directed verdict against a criminal defendant, an appellate court must view the evidence in the light most favorable to the State.  State v. Burdette, 335 S.C. 34, 46, 515 S.E.2d 525, 531 (1999).  The appellate court may reverse the trial judges denial of a motion for a directed verdict only if there is no evidence to support the judges ruling.  State v. Gaster, 349 S.C. 546, 555, 564 S.E.2d 87, 82 (2002).  It is well settled that if there is any direct or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find the case was properly submitted to the jury.  State v. Lollis, 343 S.C. 580, 584, 541 S.E.2d 254, 256 (2001); see also State v. Horton, 359 S.C. 555, 598 S.E.2d 279 (Ct. App. 2004) (noting a trial judge should deny a motion for a directed verdict if there is any direct of substantial circumstantial evidence which reasonably tends to prove the accuseds guilt or from which guilt can be fairly and logically deduced).
DISCUSSION
When ruling on a motion for a directed verdict, the trial judge is concerned with the existence of evidence, not its weight.  Burdette, 335 S.C. at 46, 515 S.E.2d at 531.  A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged or raises a mere suspicion that the defendant is guilty.  See State v. Arnold, 361 S.C. 386, 390, 605 S.E.2d 529, 531 (2004); State v. McHoney, 344 S.C. 85, 97, 544 S.E.2d 30, 36 (2001).  However, a trial judge is not required to find that the evidence infers guilt to the exclusion of any other reasonable hypothesis.  State v. Zeigler, 364 S.C. 94, 102-103, 610 S.E.2d 859, 863 (Ct. App. 2005).  
The offense of third degree burglary requires, among other things, evidence that the defendant entered a building with the intent to commit a crime therein.  S.C. Code Ann. § 16-11-313 (2003).  Absent an admission by the defendant, intent may be inferred from his conduct.  State v. Haney, 257 S.C. 89, 91-92, 184 S.E.2d 344, 345 (1971).  Larceny is the taking and carrying away of the goods of another against the owners will or without his consent and with the felonious intent to permanently deprive the owner of his property and to convert it to the use of the taker.  State v. Williams, 237 S.C. 252, 116 S.E.2d 858, (1960); see also S.C. Code Ann. § 16-13-30(A) (2003) (proving the statutory maximum value for petit larceny).
It is undisputed that Houston drove Haney to ZJs on the Sunday morning in question, a time when ZJs was not open for business.  The two men entered the mobile home where Haney had previously been working.  Neither Haney nor Houston had permission to be there.  Houston was seen coming out of the mobile home while Haney was loading the stolen bathtub into Houstons automobile.  Considered in the light most favorable to the State, this was more than sufficient evidence that Houston was not only present in the mobile home but was also involved with Haney in the commission of a burglary and larceny of the property in question.  State v. Crawford, 362 S.C. 627, 608 S.E.2d 886 (Ct. App. 2005); see also Burdette, 335 S.C. at 45, 515 S.E.2d at 531 (stating when two or more persons aid, abet, and encourage one another in the commission of a crime, all being present, each is guilty as a principal); State v. Chavis, 277 S.C. 521, 522, 290 S.E.2d 412, 412-413 (1982) (holding that when several people pursue a common design to commit an unlawful act, the act of one is the act of all, and all are presumed to be present and guilty); State v. Condrey, 349 S.C. 184, 193-95, 562 S.E.2d 320, 324 (Ct. App. 2002) (holding that under the hand of one is the hand of all theory, one who joins with another to accomplish an illegal purpose is liable criminally for everything done by his confederate incident to the execution of the common design or purpose).
Intent is seldom susceptible to proof by direct evidence and must ordinarily be proven by facts and circumstances from which intent may be inferred.  State v. Tuckness, 257 S.C. 295, 185 S.E.2d 607 (1971).  The salient circumstances previously noted were more than sufficient to demonstrate Houstons intent that morning.  Additionally, the intent to commit a crime could be inferred from the breaking and entering into the mobile home.  See State v. Perry, 279 S.C. 539, 309 S.E.2d 9 (1983) (holding that where the defendant was apprehended while attempting to flee the grounds of a school which had just recently been broken into, her intent to commit a crime therein was properly left for the jury to decide); Haney, 257 S.C. 89, 184 S.E.2d 344 (holding evidence of the intent to commit a crime was sufficient because the defendant broke into a room where movie projectors and other visual aids were kept and the unexplained breaking and entry was itself evidence of intent to commit larceny); see also State v. Pinckney, 339 S.C. 346, 529 S.E.2d 526 (2000) (stating a persons actions after entering a house may be evidence of the persons intent to commit a crime at the time of entry).
Notwithstanding direct evidence of the crimes and Houstons participation in them, the lack of any other physical evidence (such as fingerprints inside the mobile home or Houstons possession of the stolen property) was a factual issue for the jury to consider and does not undermine the verdict.  State v. Davenport, 321 S.C. 134, 137, 467 S.E.2d 258, 260 n.2 (Ct. App. 1995); State v. Smith, 307 S.C. 376, 385, 415 S.E.2d 409, 414 (Ct. App. 1992).  The motion for a directed verdict was properly refused.
CONCLUSION 
Accordingly, the trial judge did not err in refusing to direct a verdict in Houstons favor and his convictions are
AFFIRMED.
ANDERSON, HUFF, and WILLIAMS, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.