**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Antoine Lakida Hightower, Appellant.

Appellate Case No. 2018-000822

———————————

Appeal From York County
John C. Hayes, III, Circuit Court Judge,

———————————

Unpublished Opinion No. 2021-UP-261
Heard December 8, 2020 – Filed July 7, 2021

———————————

**AFFIRMED**

———————————

Appellate Defender Joanna Katherine Delany, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Joshua A. Edwards, both of Columbia; and Solicitor Kevin S. Brackett, of York, for Respondent.

———————————

**PER CURIAM:** Appellant Antoine Lakida Hightower appeals his convictions for first-degree burglary, kidnapping, assault and battery of a high and aggravated nature (ABHAN), and possession of a weapon during the commission of a violent crime. He argues the circuit court erred by: (1) denying his pretrial motion for a psychiatric

evaluation; (2) declining to order a competency evaluation; (3) and admitting prior statements given by the victim and another witness who also testified at the trial. We affirm.

## FACTS

On August 23, 2017, Tymel McCullough, Maurice Taylor, and two female acquaintances were socializing in a motel room in York County. McCullough was loitering outside the room when Appellant asked to borrow a lighter. McCullough responded that he had a lighter but it was not on his person. McCullough then walked back to his room, and Appellant followed. McCullough went inside his room, but he and Taylor did not grant Appellant entry into the room. After knocking on the door a few times, Appellant kicked it in. Appellant entered the room brandishing what looked like a handgun[1] and proceeded to ask for McCullough.[2] McCullough ran out of the room, but Appellant caught him and battered him with the handgun. McCullough picked up a nearby brick and hit Appellant hard enough to momentarily escape his clutches. McCullough ran back to the room, but the door would not close, so Appellant reentered the room and resumed his assault on McCullough. Appellant hit McCullough with the brick multiple times in the neck area until McCullough became temporarily paralyzed and then unconscious. Appellant then grabbed an item off a nightstand and/or drawer and left the room. He was arrested shortly thereafter about a mile and a half from the motel.

On December 7, 2017, a York County grand jury indicted Appellant for kidnapping, first-degree burglary, ABHAN, and possession of a weapon during the commission of a violent crime. On March 27, 2018, Appellant appeared in court for a hearing to express his desire for a new attorney due to his dissatisfaction with the State's plea offer. After his counsel requested that the court let Appellant "air out whatever grievances he ha[d] and decide whether or not they[] were legitimate enough for [counsel] to be relieved," the circuit court engaged Appellant in the following colloquy:

Court:      Okay. . . . [H]ow old are you?

Appellant:   I'm 40 years old, sir.

Court:      How far did you go in school?

---

[1] The handgun was actually a pellet gun.
[2] Appellant asked for McCullough by his nickname, "Gold."

Appellant:    A GED.

Court:        Have you ever been treated for any mental or emotional disability?

Appellant:    Yes[] sir, I am.

Court:        Tell me about that.

Appellant:    I [was] kind of diagnosed back in 2000 with paranoid schizophrenic.

Court:        Al[right].  Are you on any kind of medication today?

Appellant:    Yes[] sir, I am.

Court:        What type of medication?

Appellant:    Seroquel.

. . . .

Court:        And have you been receiving that medication while you've been in the York County Detention Center?

Appellant:    Yes, I have.

Court:        And you've been treated through Catawba Mental Health?

Appellant:    Not since I been in here, no.

Court:        But you've been prescribed medication?

Appellant:    Yes[] sir.

> Court:        The fact that you're taking Seroquel for some schizophrenia, does that affect your ability to understand what you're doing here?
>
> Appellant:   No[] sir.
>
> . . . .

After the court explained to Appellant his level of exposure and what the plea offer by the State meant in relation to his charges, Appellant asked for a new attorney because he felt the time offered was "too much." Appellant stated: "All I did was get into a fight[,] and the situation got out of hand, and the guy [is] locked up right now, so why should I have to sign for fifteen years?" The court found there was no basis to relieve Appellant's court-appointed attorney.

On April 4, 2018, Appellant appeared before the court again on a motion for a continuance and a motion for a mental evaluation. Appellant's counsel advised that he was compelled to ask for the mental evaluation after discovering Appellant suffered from schizophrenia during the prior hearing before the court. The circuit court then engaged Appellant in the following colloquy:

> Court:        Al[]right. [Appellant], how old are you?
>
> Appellant:   Forty years old, sir.
>
> . . . .
>
> Court:        Have you ever been treated for any mental disability?
>
> Appellant:   Yes[] sir.
>
> Court:        When?
>
> Appellant:   I've been treated pretty much all my life. It started maybe at the age of 15.
>
> . . . .
>
> Court:        What's the last job you had?

Appellant:   I was working at Ruby Tuesday, but they had stopped working me because of my mental situation.

Court:       And . . . who do you live with?

Appellant:   Right now, I don't live with anyone.   I'm homeless.

Court:       Where did your [disability] check go?

Appellant:   It was direct deposited into my bank.

Court:       And do you have any children?

. . . .

Appellant:   I have three.

The court found that Appellant was competent and that there was no basis to believe Appellant's ability to understand the difference between right and wrong at the time of the incident was affected by his mental state.  After Appellant's counsel noted that the court did not ask Appellant any questions regarding the incident and that he had not been on his medication at the time of the incident, the court stated the fact that Appellant was off his medication in and of itself was not enough to compel an evaluation.  The court noted that " judges ha[d] been just very recently cautioned on . . . signing . . . for mental evaluations."  After granting Appellant's motion for a continuance and denying the motion for a mental evaluation, proceedings concluded for the day.

Appellant's trial took place over the course of two days beginning on April 23, 2018.  On day two, the State called Taylor as a witness.  Taylor testified that he had known Appellant prior to the incident and had multiple interactions with him— including dinner with him at his house.  Taylor stated that on the night of the attack, Appellant continuously knocked on the door, but Taylor told him he could not come inside because the motel policy did not allow visitors at that hour.  Eventually, Taylor stated, Appellant kicked in the door and entered the room carrying the gun.  Taylor testified that Appellant asked for McCullough by his nickname, "Gold," and Taylor feared Appellant would harm him and the female occupants.  Taylor stated McCullough fled the room and returned moments later bleeding profusely.  He noted

that Appellant then entered the room and hit McCullough with a brick several times in the head, neck, back, and body. Taylor stated that while Appellant was attacking McCullough, Appellant exclaimed: "Where is that[,] Gold? Where is that?" According to Taylor, McCullough replied: "You're not going to get it this way." Taylor asserted that Appellant exited the room after grabbing an item off the nightstand and/or from the drawer.

Further, the State called McCullough as a witness. McCullough testified that he first saw Appellant at McCullough's father's place of work, Ruby Tuesday. McCullough recounted the events of the night in question in lockstep with Taylor's recitation—although he provided more details regarding Appellant's assault on him.

Appellant was found guilty as charged and sentenced to twenty-five years for burglary and kidnapping, twenty years for ABHAN, and five years for the weapons charge. This appeal followed.

## ISSUES ON APPEAL

1. Did the circuit court abuse its discretion by denying Appellant's motion for a mental health evaluation pursuant to an insanity defense even though Appellant allegedly suffered from schizophrenia?

2. Did the circuit court abuse its discretion by denying Appellant's motion for a mental health evaluation to determine Appellant's competency to stand trial?

3. Did the circuit court abuse its discretion by admitting the body camera footage containing McCullough and Taylor's prior consistent statements even though both declarants testified at trial?

## STANDARD OF REVIEW

The decision whether to order a mental health evaluation to assess a defendant's criminal responsibility or competency to stand trial is within the discretion of the circuit court. *Monahan v. State*, 365 S.C. 130, 133, 616 S.E.2d 422, 424 (2005); *State v. Colden*, 372 S.C. 428, 435, 641 S.E.2d 912, 916 (Ct. App. 2007). Likewise, the admission of evidence is within the discretion of the circuit court and will not be reversed on appeal absent an abuse of that discretion. *State v. Foster*, 354 S.C. 614, 620–21, 582 S.E.2d 426, 429 (2003). "An abuse of discretion occurs when the conclusions of the [circuit] court either lack evidentiary support or are controlled by an error of law." *Colden*, 372 S.C. at 435, 641 S.E.2d at 917.

LAW/ANALYSIS

## I.      INSANITY DEFENSE

Appellant argues the circuit court erred by denying his motion for a mental health evaluation because the denial deprived him of the opportunity to determine the possible existence of an insanity defense.  Appellant contends that because the circuit court knew Appellant had been diagnosed with schizophrenia and was off his medication at the time of the offense, it was error to deny the evaluation.  The State counters that the circuit court did not abuse its discretion because Appellant failed to produce any evidence to warrant an evaluation, i.e., documentation of Appellant's treatment or mental health history.  Further, the State highlights the fact that Appellant did not indicate that he intended to present a mental health defense at trial. We agree with the State.

"In every criminal case, it is presumed the defendant is sane." *State v. Lewis*, 328 S.C. 273, 277, 494 S.E.2d 115, 117 (1997).  "[A] defendant is considered legally insane if, at the time of the offense, he lacked the capacity to distinguish moral or legal right from wrong." *State v. South*, 310 S.C. 504, 508, 427 S.E.2d 666, 669 (1993); S.C. Code Ann. § 17-24-10(A) (2014) ("It is an affirmative defense . . . that, at the time of . . . the offense, the defendant, as a result of mental disease or defect, lacked the capacity to distinguish moral or legal right from moral or legal wrong or to recognize the particular act charged as morally or legally wrong.").  A defendant is "guilty but mentally ill if, at the time of . . . the offense, he had the capacity to distinguish right from wrong or to recognize his act as being wrong . . . , but because of mental disease or defect[,] he lacked sufficient capacity to conform his conduct to the requirements of the law."  S.C. Code Ann. § 17-24-20(A) (2014); *see also United States v. Taylor*, 437 F.2d 371, 375–76 (4th Cir. 1971) ("The test as applied in this Circuit is whether 'at the time of such conduct[,] as a result of mental disease or defect[,] he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.'" (quoting *United States v. Chandler*, 393 F.2d 920, 926 (4th Cir. 1968))).

Appellant cites *Taylor* for guidance in this matter.  The defendant in *Taylor*, while incarcerated for armed robbery, assaulted another man with a metal mop wringer.  437 F.2d at 373.  He was charged with assault with a deadly weapon for the attack.  *Id.*  His attorney filed a motion for a mental health examination, reciting

the defendant's history[3] and pointing out that the charged "'crime [was] of a violent and impulsive nature and apparently without rational motive.'" *Id.* at 373–74. The district court ordered an examination, but ten minutes into the examination, it was terminated because the defendant threatened one of the two psychiatrists conducting the examination. *Id.* at 374. On the same day of the examination, the two psychiatrists filed their report, finding "there [was] no indication from [their] present examination that [the defendant] lacked the requisite competency to commit" the charged crime. *Id.* "The district court accepted the report and required no further examination." *Id.* However, at trial, the defendant suddenly attacked a testifying witness with a chair, and the district court declared a mistrial. *Id.* Before the new trial began, the defendant's attorney presented a new motion for a mental health evaluation, alleging substantially the same facts cited in support of their previous motion. *Id.* at 375. The motion was denied, the trial proceeded without an insanity defense, and the defendant was found guilty. *Id.*

On appeal, the Fourth Circuit found the defendant was not "given an adequate opportunity to develop a possible defense of insanity" and remanded the case for an examination. *Id.* at 377, 379. The court stated the truncated examination was not sufficient to evaluate the defendant's total personality at the time of the commission of the offense to determine his criminal culpability. *Id.* at 378. The court found that the defendant's "motions were replete with factual allegations casting serious doubt on [his] responsibility for his conduct." *Id.* at 377. "Both motions recited his extensive history of mental disturbance, his record of impulsive behavior, his own desire for treatment, and previous expert medical opinion to the effect that he was 'psychotic' and lacked sufficient internal controls over his conduct. Bolstering these allegations were the defendant's actions at the brief interview and at his first trial." *Id.*

Unlike *Taylor*, the record here is not replete with factual allegations casting doubt on Appellant's responsibility for his conduct. Appellant did not present the circuit court with any evidence of a history of impulsive behavior or psychotic episodes resulting from a lack of medication. *See Taylor*, 437 F.2d at 377. Appellant's own pretrial statement that "all [he] did was get into a fight" that got out of hand shows that he was cognizant of his actions. *See South*, 310 S.C. at 508, 427 S.E.2d at 669 ("[A] defendant is considered legally insane if, at the time of the offense, he lacked the capacity to distinguish moral or legal right from wrong.").

---

[3] The defendant had asserted insanity as his lone defense at his former armed robbery trial. *Id.* at 373.

Furthermore, there was no showing by Appellant that he intended to introduce evidence at trial that he lacked criminal responsibility.[4] *See Monahan*, 365 S.C. at 133, 616 S.E.2d at 424 ("The [circuit court] has the discretion to order a mental health evaluation where the defendant indicates *an intent to introduce evidence at trial that he lacked criminal responsibility*." (emphasis added)); *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985) ("[When] a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense."). Moreover, Appellant has prior criminal convictions and has not claimed to have used insanity or any mental health-related defense in any previous matter. *Cf. Taylor*, 437 F.2d at 373 (noting the fact that the defendant had pled insanity as his lone defense during his prior armed robbery trial). Accordingly, we find the circuit court did not abuse its discretion by denying Appellant's motion for a mental health evaluation. *See Monahan*, 365 S.C. at 134, 616 S.E.2d at 424; *State v. Wilson*, 345 S.C. 1, 6, 545 S.E.2d 827, 829 (2001) ("[The appellate court] does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the [circuit court]'s ruling is supported by any evidence.").

## II.    COMPENTENCY FOR TRIAL

Appellant argues the circuit court erred by not ordering a mental health evaluation to assess Appellant's competency to stand trial. He contends that his twenty-five-year history of mental illness warranted an evaluation. We disagree.

Section 44-23-410(A)(1) of the South Carolina Code (2018) states in relevant part:

> Whenever a judge of the circuit court . . . has reason to believe that a person on trial before him . . . is not fit to stand trial because the person lacks the capacity to understand the proceedings against him or to assist in his own defense as a result of a lack of mental capacity, the judge shall:

---

[4] On September 5, 2017, the State requested notice of any insanity defense or plea of guilty but mentally ill pursuant to Rule 5, SCRCrimP.

(1) order examination of the person by two examiners designated by the Department of Mental Health if the person is suspected of having a mental illness or designated by the Department of Disabilities and Special Needs if the person is suspected of having intellectual disability or having a related disability or by both sets of examiners if the person is suspected of having both mental illness and intellectual disability or a related disability. . . .

"Thus, if the [circuit court] believes the person may be unfit to stand trial, a competency evaluation is compulsory." *Colden*, 372 S.C. at 441, 641 S.E.2d at 920. Courts consider three factors in determining whether further inquiry into a defendant's fitness to stand trial is warranted: "(1) evidence of irrational behavior; (2) demeanor at trial; and (3) prior medical opinion regarding ability to stand trial." *Id.*; *State v. Burgess*, 356 S.C. 572, 575, 590 S.E.2d 42, 44 (Ct. App. 2003). "In some instances, the presence of just one of the factors may justify further inquiry requiring a mental evaluation." *Colden*, 372 at 441, 641 S.E.2d at 920.

Here, there is evidence in the record to support the circuit court's finding that further inquiry into Appellant's fitness to stand trial was not needed. *See Wilson*, 345 S.C. at 6, 545 S.E.2d at 829 ("[The appellate court] does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the [circuit court]'s ruling is supported by any evidence."). Appellant had not been previously found incompetent to stand trial; had a respectful demeanor before both judges and his trial counsel; appeared to understand the proceedings and charges against him—evident by his refusal to accept the State's plea offer and his request for a new attorney; and was articulate and appeared to understand the charges during his colloquy with the circuit court. *See Colden*, 372 S.C. at 441, 641 S.E.2d at 920 (setting forth relevant factors to consider when deciding whether further inquiry into a defendant's fitness to stand trial is warranted); *cf Garren v. State*, 423 S.C. 1, 13, 813 S.E.2d 704, 710–11 (2018) (finding plea counsel was not deficient for failing to seek a competency evaluation of a defendant in an ABHAN case even though there was evidence that his state of mind might have been altered during the assault based on delirious statements he made during the act). Therefore, the circuit court did not abuse its discretion by declining to order a mental health evaluation.

## III.   POLICE BODY CAMERA HEARSAY

Appellant contends that the circuit court erred by admitting McCullough and Taylor's statements recorded on the responding officer's body camera. Appellant

argues the statements were hearsay without any exception and had a bolstering effect. The State contends that the statements fall within the excited utterance exception to the hearsay rule. We agree with the State.

An "excited utterance" is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Rule 803(2), SCRE. "Whether a statement is admissible under the excited utterance exception to the hearsay rule depends on the circumstances of each case[,] and the determination is generally left to the sound discretion of the [circuit] court." *State v. Burdette*, 335 S.C. 34, 43–44, 515 S.E.2d 525, 530 (1999) (finding a victim's statements made to the police within one hour of a physical attack admissible as an excited utterance). "An excited utterance may be admitted whether or not the declarant is available as a witness." *State v. Ladner*, 373 S.C. 103, 116, 644 S.E.2d 684, 691 (2007).

Here, Taylor and McCullough's statements to law enforcement were made well within one hour of the attack. *See Burdette*, 335 S.C. at 43, 515 S.E.2d at 530. The surveillance video of the incident shows police responding to the motel within thirty minutes of the attack. Having been subjected to a brutal attack, both Taylor's and McCullough's statements fall within the excited utterance exception. *See State v. Dennis*, 337 S.C. 275, 284, 523 S.E.2d 173, 177 (1999) ("The rationale behind the excited utterance exception is that the startling event suspends the declarant's process of reflective thought, reducing the likelihood of fabrication."); *see also Varner v. State*, 832 S.E.2d 792, 799 (Ga. 2019) (finding statements recorded on a police officer's body camera from a victim of a shooting and his fiancé admissible as an excited utterance); *id.* ("Although the recording depicts Smith and Deberry after the shooting occurred, had an objection been raised, the trial court would have been fully authorized to rule that the stress and excitement caused by the shooting had not yet dissipated. The police officers responded just minutes after the shooting, and Deberry was still bleeding profusely as he waited for an ambulance."). Furthermore, the circuit court redacted all statements made by the responding officer and portions of the recording unrelated to the witnesses. Thus, we find the requirements of Rule 803(2) were met, and as such, the statements were not bolstering hearsay. Therefore, we find the circuit court did not abuse its discretion by admitting the statements. *Foster*, 354 S.C. at 620–21, 582 S.E.2d at 429.

## CONCLUSION

Based on the foregoing, Appellant's convictions are

**AFFIRMED.**

**HUFF, WILLIAMS, and GEATHERS, JJ., concur.**